FERDINANDO GEORGE ET AL. v. THE BOARD OF EXCISE
OF THE CITY OF ELIZABETH.

Argued February 20, 1906—Decided June 11, 1906.

The fact that an unorganized body of persons known as Faith Curists,
who believe in God and Christ, hold meetings for Bible study
and the religious and secular instruction of the young in a
building the upper part of which is occupied as a dwelling and
the downstairs rear portion of which is used for storage pur-
poses, does not constitute such building or such body of persons
"a church" within the meaning of chapter 21 of the *Pamph. L.*
1905, *p.* 42, so that an inn and tavern may not be licensed as
"a new place" within a limit of two hundred feet "ascertained
by measurement from the nearest point of the church edifice."

On *certiorari*.

Before Justices GARRISON, GARRETSON and SWAYZE.

For the prosecutor, *Clarence D. Meyer.*

For the defendant, *James C. Connolly.*

The opinion of the court was delivered by

GARRISON, J. The prosecutors seek to set aside the action
of the board of excise of the city of Elizabeth in granting
a license to one Ernest Richartz, to keep an inn and tavern,
on the corner of East Grand and Spring streets, in said city
of Elizabeth.

The ground upon which the prosecutors rely is that the
license in question was granted contrary to the provisions of
the laws of 1905. *Pamph. L., p.* 42. This act is amendatory
of section 2 of the act of 1889, and provides as follows:

"No license to sell spirituous, vinous, malt or brewed
liquors, by less measure than one quart, shall be granted by
any court, excise board or other board or authority, in any
new place within two hundred feet of a church, school-house
or armory; the two-hundred-feet limit herein mentioned shall

be ascertained by measurement from the nearest point of the church edifice, school-house or armory, to the nearest point of the building wherein such liquors, or any of them, are intended to be sold."

The claim of the prosecutors is that the testimony establishes the existence of a church within the proscribed limit; that there is within such limit a church edifice or anything fairly answering that description, cannot be said to be shown. Neither does the testimony show that any religious organization holds within the proscribed area stated meetings for church services. Just what the testimony upon these points is, is best stated in the language of the two witnesses called by the prosecutors. One, the wife of the prosecutor Burke, testified "they have sewing school for children and services on certain evenings and on Tuesday afternoon, but not on Sunday morning. It is simply a mission. It is called 'A Faith Cure'—that is what it is supposed to be; but if he [the pastor] puts anything in the paper, he calls it the 'Gospel Mission.'" The other witness, the wife of the prosecutor Jenkins, testified that her little girl attended Sunday school and sewing school there; that the upstairs portion of the house is occupied as a dwelling, the downstairs rear portion is used for storage purposes and the lower portion (presumably the front room) has chairs in it and services are conducted there by Mr. Bennett. She also said that it was simply a mission; that they do not believe in boards of trustees, and in answer to the question of its organization under the laws of the state replied, "It is not the same as other churches;" also, that "they believe in God and in Christ fully and read and study the Bible," and that the people who go there are known as "Faith Curists," and that the witness was a "Faith Curist." On the outside of the building are the words, "Mount Zion Mission."

It is not entirely clear whether the word "church," used in this statute in connection with "school-house or armory," and referred to later as "the church edifice," is restricted to this latter meaning, or whether it may not also mean a body of persons of a common religious faith associated for purposes

of worship under some form of permanent organization. In support of the first of these constructions it may be said that if the body of worshippers may be ambulatory the observance of the statute is impracticable. The Salvation Army would be an instance of such ambulatory body of religious worshippers, and yet I fancy it would be wholly impossible to administer this statute with reference to this body of religionists if wherever they may be they are to be regarded as a church within its meaning. The cases of *People* v. *Dalton*, 9 *Misc. Rep.* (*N. Y.*) 249, and *State* v. *Midgett*, 85 *N. C.* 538, illustrate the view taken in other states of somewhat similar statutes.

It is not necessary, in the present case, to decide which of the two meanings of our statute is the one intended by the legislature, for the reason that the conditions described by the foregoing testimony comport with neither of them. The legislature clearly did not intend that wherever religiously inclined persons meet together for Bible study and the like a church existed within the meaning of this excise regulation, but unless the statute has a meaning as broad as this it does not include the conditions that constitute the prosecutor's case. The action of the municipal board brought up by this writ is affirmed.