In the Matter of the Petition of Howard Townsend, Respondent, for the Revocation of Liquor Tax Certificate No. 1,422, Issued to Edward G. Smith, Appellant.

Liquor Tax Law — provision prohibiting sale of liquors within 200 feet of a schoolhouse — meaning and application of term "schoolhouse" — when necessary to obtain consents — effect of failure of notary to file signature.

A building used as a registered training school for nurses is not a "schoolhouse" within the purview of the Liquor Tax Law (L. 1896, ch. 112, as amd.) prohibiting the traffic in liquor to be drunk on the premises where sold, in any building which shall be on the same street or avenue and within 200 feet of a building occupied exclusively as a schoolhouse. The schools intended to be protected by the statute are primarily the common public schools devoted to the general and intermediate education of children and youth, and, secondarily, semi-public and private schools conducted for the same purpose. The term "schoolhouse," as used in this statute, includes buildings used for such schools, including in the classification those in which grammar and high schools are conducted.

*Semble*, that it is not necessary to obtain consents of owners of dwelling-houses long vacant, which, by reason of their location, are not likely to be again occupied as such.

*Semble*, that the failure of a notary public to file his autograph signature in the office of the register of New York county is an irregularity which does not vitiate an acknowledgment taken by him.

*Matter of Townsend*, 129 App. Div. 909, reversed.

(Argued March 15, 1909; decided April 27, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1908, which affirmed an order of Special Term granting a motion for the revocation and cancellation of a liquor tax certificate.

On April 29th, 1908, a liquor tax certificate was issued to the appellant, Edward G. Smith, under the provisions of the Liquor Tax Law (L. 1896, ch. 112, as amended), authorizing him to conduct the business of trafficking in liquors from May 1st to September 30th, 1908, at the southwest corner of

Sixteenth street and Fifth avenue, otherwise known as No. 108 Fifth avenue, in the borough of Manhattan and city of New York. On May 13th, 1908, the petitioner, a taxpayer of that borough and city, presented to the Supreme Court an application for the revocation of the certificate granted to the appellant. It was based upon the following three grounds: 1. That the appellant in applying for the certificate had made a false statement to the effect that there was no building occupied exclusively as a schoolhouse within two hundred feet of the building in which the liquor business was to be carried on. 2. That the petitioner had falsely stated that there were only three buildings occupied exclusively as dwellings within two hundred feet of such building. 3. That the consents obtained from the owners of dwelling houses had not been properly acknowledged as required by the statute.

After a trial of the issue presented by the petition, the court at Special Term made an order revoking the liquor tax certificate. The order was predicated upon the ground that there was a building occupied exclusively as a schoolhouse within two hundred feet of the place where the petitioner's liquor business was being carried on. As to that there was no controversy of fact. It was conceded that a building used exclusively as a training school for nurses was within two hundred feet of the place where the appellant carried on his business. The order was silent as to the two other grounds set forth in the petition for the revocation of the certificate. There was a unanimous affirmance by the Appellate Division and the appellant Smith now appeals to this court.

*D. Cady Herrick* for appellant. A training school for nurses, or a house used as a training school for nurses, is not a school or a schoolhouse within the meaning of the statute. (*Riggs* v. *Palmer*, 115 N. Y. 506 ; *People ex rel.* v. *Comr. of Taxes*, 95 N. Y. 554.) The petitioner failed to establish that the consent of the owners of dwelling houses required by the Liquor Tax Law were not filed. (L. 1896, ch. 112, § 17, subd. 8.) The claim that the acknowledgments taken by

Louis S. Grenner, notary public, New York county, were insufficient, because it appears that at the time of the taking of the acknowledgments he had not filed in the register's office of the county of New York the certificate required by chapter 559 of the Laws of 1907, is not tenable. He was a *de facto* officer, and his power as notary public to take acknowledgments cannot be attacked collaterally. (*Schiff* v. *Liepziger*, 65 App. Div. 33; *Reed* v. *City of Buffalo*, 3 Keyes, 447.)

*Wilson M. Powell* for respondent. The building 6 West Sixteenth street was at the time of the appellant's application for the certificate, and still is, a schoolhouse within the meaning of the Liquor Tax Law. (*O. M. College* v. *Rush*, 22 Neb. 449; *Matter of Ruland*, 21 Misc. Rep. 504; *People ex rel. Clausen* v. *Murray*, 5 App. Div. 441; *Matter of Lyman*, 48 App. Div. 275; *Matter of Zinzow*, 18 Misc. Rep. 653; *Matter of McCuster*, 47 App. Div. 111; *People ex rel. Cairns* v. *Murray*, 148 N. Y. 171; *Matter of Rupp*, 55 Misc. Rep. 313; *Matter of Finley* v. *Davidson*, 58 Misc. Rep. 639.) There were and are five buildings "occupied exclusively as dwellings" the nearest entrance to which was and is within 200 feet, measured in a straight line, of the nearest entrance to the saloon premises No. 108 Fifth avenue. (*Matter of Ruland*, 21 Misc. Rep. 504; *Matter of Lyman*, 26 Misc. Rep. 568; *Matter of Rasquin*, 37 Misc. Rep. 693; *Matter of Rupp*, 55 Misc. Rep. 313.) The acknowledgments to the consents taken by Louis S. Grenner, notary public, were insufficient. (*Kennedy* v. *Warner*, 51 Misc. Rep. 362; *People* v. *Green*, 56 N. Y. 466.)

WERNER, J. The "Liquor Tax Law" provides that traffic in liquor, under subdivision 1 of section 11 of the act, shall not be permitted "in any building, yard, booth or other place which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or schoolhouse." (Section 24, subd. 2.) The prohibition contained in this section is followed by certain exceptions, which

have no application to the case at bar, in favor of specified places in which the liquor traffic had been lawfully carried on prior to the enactment of the statute and was being continued at that time.

Subdivision 1 of section 11 above referred to relates to the traffic in liquors " to be drunk upon the premises where sold, or which are so drunk, whether in a hotel, restaurant, saloon, store, shop, booth or other place, or in any outbuilding, yard or garden appertaining thereto or connected therewith." This last quoted provision of the statute applies to this case, for it was under that section and subdivision that the appellant applied for his liquor tax certificate. The statute requires the applicant for such a liquor tax certificate to make a written application, signed and sworn to by him, which must specify, among other things, the number of " buildings occupied exclusively as dwellings there are, the nearest entrance to which is within two hundred feet measured in a straight line, of the nearest entrance to the premises where the traffic in liquors is intended to be carried on, and whether the applicant intends to traffic in liquors under the certificate applied for in any building, yard, booth, or other place, which is on the same street or avenue and within two hundred feet of a building occupied exclusively as a church or schoolhouse." (Section 17, subd. 5.)

The statute further provides that _ " when the nearest entrance to the premises described in said statement as those in which traffic in liquor is to be carried on is within two hundred feet, measured in a straight line, of the nearest entrance to a building or buildings occupied exclusively for a dwelling, there shall also be so filed simultaneously with said statement a consent in writing that such traffic in liquors be so carried on in said premises during a term therein stated, executed by the owner or owners, or by a duly authorized agent or agents of such owner or owners of at least two-thirds of the total number of such buildings within two hundred feet so occupied as dwellings, and acknowledged as are deeds entitled to be recorded." (Section 17, subd. 8.) This subdivision also con-

tains exceptions similar to those set forth in subdivision 2 of
section 24 in favor of places where the liquor traffic had been
lawfully carried on prior to the enactment of the statute and
was being lawfully continued thereafter.

The revocation and cancellation of liquor tax certificates
are also provided for in cases where the applications therefor
contain material false statements, or where the applicant has
failed to file the properly acknowledged consents of the owner
or owners, or their duly authorized agent or agents, of at least
two-thirds of the total number of buildings occupied exclu-
sively as dwellings within two hundred feet of the place in
which the traffic in liquor is to be carried on.

The record discloses that when the appellant made his appli-
cation for the liquor tax certificate above referred to, the New
York Hospital owned and maintained what is known as a
training school for nurses at No. 6 West 16th street, within
two hundred feet of the building in which the appellant
intended to engage in the business of trafficking in liquor.
The main question presented upon this appeal is whether the
building in which the training school was conducted is a
" schoolhouse" within the meaning of the statute. This train-
ing school building was a seven-story structure, containing
recitation rooms, study rooms and sleeping rooms for women
taking the prescribed course. It was, in fact, separate from
the other hospital buildings, although connected therewith by
a door leading into the administration building from which
there were convenient avenues of access to the main hospital
building which contained the wards for patients. The insti-
tution was registered by the regents of the university under
article 12 of the Public Health Law (L. 1893, ch. 661, as
amended by L. 1903, ch. 293), which requires the students in
such institutions to be over twenty-one years of age at the
time of entrance, and authorizes the issuance of licenses or
certificates which entitle the holders to practice as registered
nurses. Pursuant to this law the hospital authorities adopted
rules prescribing a two years' course in such studies as would
fit the students to be trained nurses, and that none but women

at least twenty-three years of age should be admitted to the course.

The question which we are called upon to decide is not free from difficulty. It appears to be one of first impression, for neither the industry of counsel, nor our own research, has discovered any decision bearing directly upon it. The definitions of the lexicographers do not help us because, as applied to the subject under consideration, it means nothing to say that a "schoolhouse is a building in which a school is conducted." (Standard dictionaries.) The nearest approach to a legal definition of the noun "schoolhouse" is to be found in the cases dealing with the statutes exempting from taxation certain educational institutions, and these are more illustrative than authoritative, for they relate to laws wholly different in purpose from the one now under consideration. Just a few citations will serve to mark the distinction, rather than the resemblance, between such cases and the case at bar. In *Chegaray* v. *Jenkins* (5 N. Y. 376) this court expressed the opinion that the term "schoolhouse," as used in an exemption statute, meant a building devoted to a subordinate school as distinguished from a "college, incorporated academy or other seminary of learning." In the later case of *Chegaray* v. *Mayor, etc., of N. Y.* (13 N. Y. 220) it was held that a building used for a private school was not exempt from taxation and that the statute embraced only the public common schools. In *Gordon* v. *Cornes* (47 N. Y. 608, 616) this court considered that part of the Constitution of 1846 which related to the distribution of the common school fund, and decided that normal schools were not common schools because they were "not intended for the education of the children of the inhabitants of the districts where they are to be located, but for the training of teachers for all the common schools." In the case of *Merrick* v. *Inhabitants of Amherst* (12 Allen, 500), a taxpayer's suit to restrain the raising of money under a Massachusetts statute which authorized the establishment of an agricultural college, the constitutionality of the statute was assailed upon various grounds, one of them being that it was

in contravention of the provision "that all moneys raised
by taxation  *  *  *  for the support of public schools
*  *  *  shall be applied to, and expended on, no other
schools than those which are conducted according to law,
under the order and superintendence of the authorities of the
town or city in which the money is to be expended." The
Supreme Judicial Court summarily negatived the contention
that the moneys raised for public schools could by any possi-
bility be regarded as applicable to the purposes of the pro-
posed agricultural college, and emphasized its decision by
saying : " The phrases ' public schools ' and ' common schools '
have acquired under the legislation and practice of this State
a well-settled signification. They are never applied to the
higher seminaries of learning, such as incorporated academies
and colleges." Under a provision of the Constitution of the
state of Louisiana, exempting from taxation all property
used exclusively for colleges and schools, it was held that a
school for stenography and typewriting was not entitled to the
exemption. (*Lichtentag* v. *Tax Collector*, 46 La. Ann. 572.)
In that case " schools " were defined to be educational estab-
lishments, below the grade of colleges, devoted to imparting
elementary knowledge in the instruction of young children.
The only case brought to our notice, in which this court has
had occasion to pass upon the identical provisions of the
Liquor Tax Law now under consideration, is that of *People
ex rel. Cairns* v. *Murray* (148 N. Y. 171), but in that case
the question was whether a parochial school building contain-
ing sleeping apartments for teachers, who were sisters of a
Catholic order, was a building "occupied exclusively as a
*  *  *  schoolhouse." That question was decided in the
affirmative upon the theory that the statute, fairly and reason-
ably interpreted, could not be said to exclude from its opera-
tion a schoolhouse which, being clearly within its terms in all
other respects, also contained sleeping rooms for some of the
instructors.

The cases which we have cited, although dealing with
constitutional and statutory questions quite foreign to the

precise subject of this discussion, are useful in illustration, because they emphasize the fact that when the term "schoolhouse" is used in the fundamental law, or the legislative enactments of a state, the meaning of the term is always to be derived from the purposes for which it is employed. A "school" in its broadest sense may be said to include any institution devoted to instruction of any kind; and in the same broad sense a "schoolhouse" may be defined as a place or building used for any such purpose. But there are a great variety of so-called schools devoted to many special sciences and trades. There are schools for education in the professions of law, medicine and theology; schools for painting, music and other advanced arts; schools for stenography and typewriting; schools for dancing, gymnastics, physical culture and boxing; and schools for almost numberless other more or less practical occupations. Many, if not all, of these special courses are taken up by persons of mature years who have passed through the earlier educational training which is an essential preliminary to every avocation or vocation requiring intelligence, thought or talent. All are instructive to a degree, but none are within the usually accepted definition of education. Much less can they be within the purview of a particular statute unless they are plainly specified in its terms, and still less are they to be considered within the definition of "schools" and "schoolhouses" as those words are ordinarily understood.

The statute under consideration was enacted for the purpose of subjecting the traffic in intoxicating liquors and beverages to the regulation and control of the state authorities. Experience has proven that some branches of the liquor traffic are attended by certain evils which cannot be wholly eradicated, but may be considerably minimized by proper statutory regulation. The places used for the sale of intoxicants, and more particularly those devoted to the sale thereof for consumption upon the premises, may be more or less objectionable to various classes of persons. That is largely a matter of degree depending, of course, upon the

character of the neighborhood and the contiguous surroundings. But the fact remains that it is a business authorized by law and must be located somewhere. In dealing with this problem of location the legislature, for obvious reasons, concluded to inhibit the traffic within two hundred feet of churches and schoolhouses. Such edifices, being devoted to religious and educational purposes, are invested with a public character which renders the inhibition manifestly proper. As to schoolhouses the inhibition is absolute and unconditional. No one can consent to the conduct of the liquor traffic in any place within two hundred feet of a schoolhouse. This phase of the statute indicates that the legislature, in using the term "schoolhouse," had in view primarily the common public schools devoted to such general elementary and intermediate instruction as is adapted to the education of our children and youth; and perhaps secondarily such semi-public and private schools as are conducted for the same purpose. Broadly classified this includes all "schoolhouses" in which our so-called grammar and high schools are conducted. While we can find no express warrant in the words of the statute for placing private and semi-public schools in the same category with common public schools, we are satisfied that it was not the intention of the legislature to exclude the former from its wholesome protection. That is the utmost limit, however, to which the language of the statute can be extended. The evident intention of the legislature was to remove the masses of our school-going children and youth as far as possible from the influences of the liquor traffic, and the most effective means of accomplishing this end was thought to be the interdiction of the traffic within a certain radius surrounding the ordinary schoolhouse. It is obvious that, unless we draw a line with reference to schoolhouses at the point thus indicated, we must go to the extreme length of holding that the term "schoolhouse" includes every place where instruction is given of any kind or degree, and to persons of any age. These considerations applied to the conceded facts of this case lead us to conclude that a building used as a

training school for nurses is not a schoolhouse within the purview of the Liquor Tax Law.

The two other questions which were set forth in the petition herein as grounds for the revocation of the appellant's liquor tax certificate do not seem to have been passed upon by the court at Special Term, and we do not decide them upon this appeal. It may save further litigation in this proceeding, however, to suggest that upon these questions, as presented by the facts in the present record, the petitioner cannot be entitled to an order revoking the appellant's liquor tax certificate. It appears that there were five buildings within the two hundred foot limit prescribed by the statute which were originally occupied by dwelling houses. Three of these were still occupied as dwelling houses when this proceeding was instituted. Two others had long been vacant. They were held for sale. Being in a neighborhood that is rapidly taking on the characteristics of a business section, it is not unreasonable to conclude that they will not again be occupied as dwellings. In that view of the case the appellant had obtained the requisite number of consents, and it was not necessary for him to obtain the consent of the owner or owners of the two buildings which were vacant.

The petition herein sets forth that the consents obtained by the appellant had not been executed in conformity to the statute. The requirement of the statute, as we have seen, is that such consent shall be acknowledged in the same manner as deeds which are to be recorded. The specific objection which is made to the acknowledgment of the consents obtained by the appellant is that the notary who took them had not previously filed his autograph signature in the office of the register of New York county, as required by law. (L. 1907, ch. 559, sec. 1.) It seems to be conceded that the person who took the acknowledgments was in fact a notary public, and, if that is so, his failing to file his autograph signature was an irregularity which did not invalidate the acknowledgments taken by him.

The order herein should be reversed and petition dismissed, with costs to the appellant in all courts.

CHASE, J. (dissenting).   I dissent for the reason that I am of the opinion that a building occupied exclusively by a school, registered by the regents of the university of this state, is a "schoolhouse" within the meaning of the Liquor Tax Law. I am also of the opinion that there is a question of fact as to whether the buildings Nos. 104 and 106 Fifth avenue are occupied exclusively for dwellings and that such question of fact has not been passed upon in this proceeding.

CULLEN, Ch. J., HAIGHT, VANN, WILLARD BARTLETT and HISCOCK JJ., concur with WERNER, J.; CHASE, J., reads dissenting memorandum.

Order reversed, etc.