### Application of WAKEFIELD.
### No. L.B. & W. 955.

District Court of Alaska. Third Division. Anchorage.
Sept. 29, 1945.

J. Gerald Williams, of Anchorage, for applicant.
Edward V. Davis, of Anchorage, for City of Anchorage.
Almer J. Peterson, of Anchorage, for Anchorage School
Board.

DIMOND, District Judge.

Volney Bailey Wakefield has applied to the Court for the issuance to him of a beverage dispensary license, to operate what is commonly called a cocktail bar, a virtual replica of the old-time saloon, for the sale at retail of intoxicating liquor, in a building located on Lot 3, Block 28, fronting on Third Avenue, in the City of Anchorage, Alaska. The place will be hereinafter referred to as the Bar. The Bar stands cheek by jowl to the adjoining building on the east, covering Lot 2 in the same block, known as the Anchorage Community Building or Hall, hereinafter called the Hall. The Hall and the city lot on which it is situated are owned by the City of Anchorage, but Western Alaska Fair Association, Inc., a corporation, has reserved the right to the use and occupancy of the building "for the purpose of conducting fairs and carnivals therein." The City in turn has given control of the premises to the Anchorage Public School Board, to use the building for school purposes and to permit its use for other purposes.

For more than a year past the Hall has been actually used by the Anchorage Public School authorities for classes in physical training and education of children attending the Anchorage public schools, and, incidentally, for recreational and other purposes. Such classes have been taught and trained, and are now being taught and trained, in the Hall on each school day, continuously from 9:00 A.M. to 3:45 P.M., between the day of commencement of the school year in September, and its end in the following June. The testimony showed beyond dispute that the school work so carried on in the Hall was and is in regularly organized classes, under the supervision and direction at all times of the Anchorage public school authorities, and as an integral part of the educational facilities provided by the public schools of the City of Anchorage.

The Hall has four doors, one in what is called the front end of the building on Third Avenue; two others, one leading to the main hall and one to the basement, in the rear

wall of the building on the alley; and the fourth of an emergency nature, opening out of a side wall, to be used only in case of fire or other extremity requiring prompt evacuation of the building, and so of no consequence here.

The distance from the entrance of the Bar and the front or Third Avenue entrance to the Hall is well under 200 feet. The distance from the Bar entrance and the rear door of the Hall fronting on the alley, measured not in a straight line but by the nearest traveled route on the sidewalk, is approximately 307 feet.

Excerpts from the laws of Alaska relative to the granting of beverage dispensary licenses for the sale of intoxicating liquors follow:

"That before any license is granted, as provided in this Act, it shall be shown to the satisfaction of the Court that a majority of the citizens over the age of twenty-one years, residing within two miles of the place where intoxicating liquor is to be manufactured, bartered, sold and exchanged, or bartered, sold or exchanged, have in good faith consented to the manufacture, barter, sale and exchange, or the barter, sale and exchange of the same; and the burden shall be upon the applicant or applicants to show to the satisfaction of the Court that a majority of the citizens over twenty-one years of age have consented thereto and no license shall be granted in the absence of such evidence; provided, that when it is made to appear that a majority of said citizens over the age of twenty-one years of any one place have consented to the manufacture, barter, sale and exchange or the barter, sale and exchange of intoxicating liquor, no further proof of the consent of the citizens of the place where such intoxicating liquor is to be manufactured, bartered, sold and exchanged, or bartered, sold and exchanged, will be required for twelve months thereafter.

"Provided, however, that any application for a license coming from within an incorporated town shall have attached thereto in lieu of a majority of the citizens of that district, a list of at least five references as to the integrity

of the applicant and the desirability of the issuing of a license for the premises mentioned therein. The Clerk of the Court, upon receipt of each application from within an incorporated town, shall notify the city council of that town of the necessity for action on the application by the council, in regular or special meeting and the filing with the Clerk of the Court of a certificate showing the action taken. A failure of the municipal officers to act upon applications for licenses within the period specified in the notice furnished them shall be considered a default and shall subject the city to the penalty of losing its right to a refund as herein provided. At the time set for the hearing, the Court shall consider the application and any protests that may be filed against the same, and shall also hear the applicant or others appearing in connection with the matter, and give its judgment, which shall be final. If the application is rejected the fee accompanying the same shall be returned. The licensee shall cause the license to be posted in a conspicuous position in his place of business, so that anyone entering the premises may easily read it. No license issued under the provisions of this Act shall be transferred except after first securing the consent of the Court. No refund of license fees will be allowed after the issuance of license." Sec. 3, Ch. 78, Session Laws of Alaska, 1937.

"(3) No license shall be issued for the sale of any intoxicating liquor in any building within two hundred feet of any school building or church. Provided, however, that .a license may be reissued for the sale of intoxicating liquor in any building in which the sale of intoxicating liquor was at the time of the passing of this Act, authorized by law. Be it further provided, however, that when a license for the sale of intoxicating liquor in any building within two hundred feet of a school house or church is forfeited by reason of a violation of law, no license for the sale of intoxicating liquor on those premises shall thereafter be issued." Sec. 1, Ch. 1, Extraordinary Session, Session Laws of Alaska, 1937, as amended by Sec. 1, Ch. 88, Session Laws of Alaska, 1939.

It will be noted that the Alaska liquor law is virtually a home rule statute. While the final authority to grant or refuse licenses is vested in the District Court, it seems tolerably clear that the legislature in passing this law intended the court to be bound by the public will; as expressed in the views of a majority of the citizens residing within two miles of each proposed place of sale, as to locations outside of incorporated cities, and by the views of the city councils, representing the people, as to locations within incorporated cities. However it seems equally clear that it is the duty of the Court to deny a license, even though approved by a city council, if the issuance of such license would be in violation of law or if the operation of the license would necessarily result in transgression of law. It may be argued with some force that it is the duty of the Court to grant a license, despite refusal of the city council to approve, if it clearly appears that such refusal is so capricious and so far lacking in sound reason as clearly to have been inspired by bias or prejudice or a completely frivolous disregard of the plain intent and meaning of the law, but no decision on that question is either desirable or required here.

The applicant seeks to avoid the ban of the statute by saying that the front entrance of the Hall is ordinarily kept locked and is either not used at all or so little used that the measurement to determine whether or not the Bar is within the prohibited distance of the Hall should be taken from the front door of the Bar to the back door of the Hall, a distance of some 307 feet. This contention cannot be sustained under virtually unchallenged evidence. The Superintendent of Schools of the City of Anchorage, J. Lester Minner, testified that the front entrance of the Hall is frequently used by the children in the conduct of the school classes. This evidence was fully sustained by the testimony of Jake Bartels, a witness called by the applicant. The fact that the front entrance is so extensively employed by the children using the building for school classes is beyond doubt.

More insistently it is urged by applicant's counsel that the Hall is not a school building within the intent and meaning of the statute because it is not used exclusively for school purposes and its use for school purposes is only temporary. Attention has been invited to the language used by the common council in denying approval of the application on the ground that the building is used for "school purposes" and the building is not described as a "school building," the latter being the words of the law.

Neither the industry of counsel nor the research of the Court has resulted in the discovery of any adjudicated case bearing directly on the question in all of its aspects. In the State of New York a somewhat similar statute contains the word, "exclusively" so that a school within the prohibited distance of a saloon must be used exclusively for school purposes to invoke the ban of the law. In re Townsend, 195 N.Y. 214, 88 N.E. 41, 22 L.R.A.,N.S., 194, 16 Ann.Cas. 921; Crouch v. Hoyt, Sup., 30 N.Y.S. 406; In re Hering, 133 App.Div. 293, 117 N.Y.S. 747.

Other cases cited in argument are not particularly enlightening but reference to some of these opinions may be useful. In the case of George v. Board of Excise, 1906, 73 N.J.L. 366, 63 A. 870, 871, 9 Ann.Cas. 1112, the law forbade granting of a license to sell intoxicating liquor "within two hundred feet of a church, schoolhouse or armory." The question involved was whether rooms in a building sometimes used for reading and study of the Bible, and variously known as a faith cure or Mount Zion Mission, located within 200 feet of the place for which license had been applied for, was a church within the meaning of the law. The answer given by the court was in the negative. The opinion contains the following:

"The Legislature clearly did not intend that wherever religiously inclined persons met together for Bible study and the like, a church existed within the meaning of this excise regulation."

The Circuit Court of Appeals of Maryland, in the case of Miles v. McKinney, 174 Md. 551, 199 A. 540, 547, 117 A.L.R. 207, had for construction a statute prohibiting, "the use of any building or structure for the *sale of gasoline* (italics supplied) within three hundred feet of any 'building or structure used as a church * * *.' " In that case the building within the prohibited distance was partly used as a church and partly for residential or commercial purposes. The court held:

"The word 'used' is unqualified, and when one speaks of a building, ordinarily he means the entire building and if he means to refer to but a part of it he indicates by some qualifying words that he refers to less than the whole. * * * Since * * * the Ordinance refers not to a building in which a church is located, but to a building used as a church, the conclusion seems unavoidable that it means a building wholly dedicated to purposes of religious worship."

In the case of Starks v. Presque Isle Circuit Judge, 173 Mich. 464, 139 N.W. 29, 43 L.R.A.,N.S., 1142, Ann.Cas. 1914D 773, the Supreme Court of Michigan construed a statute reading as follows:

"No license shall be issued to anyone to open up and establish a new bar or saloon having its front entrance within four hundred feet along the street line from the front entrance of a church or public schoolhouse * * *."

A religious order leased a portion of a building in the business district of a city which had been previously occupied as a flour and feed store and proposed to use the leased premises for religious purposes. In the prevailing opinion the court held (1) that the premises so leased for religious purposes was not within 400 feet of the saloon, and (2) that the operation of the saloon was first in time and therefore prior in right. Six of the judges concurred in the result on the ground that the premises so leased was not a "church" within the meaning of the statute, without giving any reason for such conclusion.

It is earnestly urged by counsel for the applicant that the term "school building," used in the applicable statute must mean a building that is used wholly and exclusively for school purposes and that any other construction is inadmissible. The essential question to be answered is that of the intent of the legislature. That intent must have been the desire to protect children attending school from direct exposure to some of the demoralizing circumstances which, by the authority of common knowledge, seem incident to the traffic in intoxicating liquor. Similar intent must actuate the legislatures of all of the states and municipalities in the enactment of similar statutes and ordinances. Judge Werner of the Court of Appeals of New York, in the case of In re Townsend, supra, expressed it in the following language [195 N.Y. 214, 88 N.E. 44] :

"The evident intention of the Legislature was to remove the masses of our school-going children and youth as far as possible from the influences of the liquor traffic, and the most effective means of accomplishing this end was thought to be the interdiction of the traffic within a certain radius surrounding the ordinary schoolhouse."

It is to be observed that in the Townsend case the building in question was one used for the training of nurses which admitted as students women at least 23 years old, and not for grade or high school instruction. Moreover, the governing New York statute prescribed that the building must be "occupied exclusively as a * * * schoolhouse."

■■ If, as we must assume, the purpose of our own legislature in enacting the statute in question was to protect minor children, then it is only reasonable to suppose that the legislature wished the children so protected in any building that was regularly used, under the control and direction of the public school authorities, by the children, for educational purposes, even though that building is not one of the buildings devoted exclusively to school purposes. Where a building is used every day during the ordinary

school hours of every school week of the entire school year for school purposes,.under the control and supervision and direction of the school authorities of the city, as in this case, it would be necessary to disregard the plain intent of the legislature and to ignore the almost equally plain meaning of the statute to say that such a building is not a "school building" within contemplation of the law. Moreover the members of the legislature undoubtedly would have followed the example of the New York legislature in using the word "exclusively" in the statute if the members had intended to provide only for the children attending the school buildings used for school purposes and for nothing else. To read the word "exclusively" into the existing statute would amount to judicial legislation.

At the hearing testimony was offered and received showing that two buildings in which two other bars are operated are within 200 feet of the Hall. One of them is called the South Seas and the other Richmond's Bar. The applicant testified that the rear door of the building in which the South Seas is located is within 31 feet of the rear door of the Hall, and that the rear door of the building in which Richmond's Bar is located is within 110 feet of the rear door of the Hall; and the attention of the Court has been invited to the unquestionably sound statement of law, appearing in 33 C.J. at page 553, as follows:

"Licensing authorities must treat alike all applicants possessing the legal qualifications, and they cannot license favored persons and exclude others possessing similar qualifications."

■ Neither the foregoing nor any other rule of law would justify the Court in granting a license contrary to law because some other individual has heretofore . been granted a license in contravention of law. The testimony concerning the South Seas and Richmond's Bar was admitted only as bearing upon the construction of our law concerning the measurement of distance between saloons on one hand and schools and churches on the other. It is said that

the settled construction in this division is to the effect that the distance should be measured between the nearest public entrances of the buildings. Whether it is considered that the mode of measurement in such cases prescribed by Sec. 475 of the Act of March 3, 1899, 30 Stat. 1253; Carter's Am. Code Cr.Proc. Sec. 475: Compiled Laws of Alaska 1913, Sec. 2584, still survives, does not appear. It has been suggested that such a construction is erroneous and that the measurement should be between the nearest points of the building which houses the saloon and the building which houses the school or church, and the opinion of the U. S. Circuit Court of Appeals for the Second Circuit in Evans v. United States, 261 F. 902, has been cited. Other testimony shows that the distance between the back door of the Hall and the front entrances, presumably the only entrances used by the public, of the South Seas and Richmond's Bar is in each case more than 200 feet.

But there is no occasion here to pass upon either the proper construction of law with respect to the measurement of distances or upon the propriety of the issuance heretofore of licenses to the South Seas and Richmond's Bar, because the undisputed facts in this case show that the door of the applicant's Bar is much less than 200 feet from the front door of the Hall commonly used by the children in their school attendance, and therefore under any theory of law the applicant's Bar is within the prohibited distance of the Hall which is here found to be a "school building" within contemplation of the statute.

Order denying the application has been entered accordingly.