51 N.J. Super. 69 (1958)
143 A.2d 262
LUCILE M. ANDREWS, NATHAN APPLEMAN AND JANET APPLEMAN, HIS WIFE; MARGARET BRUNS: HENRY SADOWSKY AND ELEANOR SADOWSKY, HIS WIFE; IRA W. SAFRAN AND PHYLISS SAFRAN, HIS WIFE, PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF OCEAN, A MUNICIPAL BODY; TOWNSHIP OF OCEAN, A MUNICIPAL CORPORATION; AND ST. MARY'S CHURCH, DEAL, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 27, 1958.
*71 Messrs. Potter & Fisher and Mr. Julius J. Golden, attorneys for plaintiffs.
Messrs. Stout & O'Hagan, attorneys for defendants Board of Adjustment of the Township of Ocean and Township of Ocean (Mr. Sidney Hertz appearing).
Messrs. Durand, Ivins & Carton, attorneys for defendant St. Mary's Church, Deal, New Jersey (Mr. Robert V. Carton appearing).
GIORDANO, J.C.C. (temporarily assigned).
The plaintiffs seek by a complaint in lieu of prerogative writ to set aside a variance granted by the Township of Ocean to the defendant St. Mary's Church, Deal, New Jersey. The proceedings were taken under the statute N.J.S.A. 40:55-39, subd. d. The issue is the legal sufficiency of the variance.
The variance is for the use of the premises known as Ivy Hedge as a parochial school and for living quarters for the nuns teaching at the school. Ivy Hedge is in Residence District, Class A. The owner has contracted to sell the same to the defendant St. Mary's Church, Deal, New Jersey. It consists of 16 acres and is located on the west side of Wickapecko Drive. The rear of the property borders on Residence District, Class E.
I find that the board of adjustment conducted a hearing upon giving proper and legal notice, and that following said hearing recommended in writing to the township committee pursuant to the ordinance and statute approval of the application by St. Mary's Church to use Ivy Hedge as a parochial school and convent subject to certain conditions and limitations set forth in their recommendations. The imposition of conditions is not uncommon and is a useful incident of variances. 1 Rathkopf Zoning and Planning (3d ed. 1956), c. 49.
I find from the recommendation of the board and concurred in by the township committee, the following conditions:
*72 "1. That the exterior of the existing building not be changed or altered;
2. That the property east of the building known as the front yard shall be maintained in its present state of landscaping;
3. That the main entrance and exit for school purposes shall be limited to the extreme westerly portion of the property known as the rear;
4. That any public area, playgrounds, athletic field, etc. be established to the rear of the existing building;
5. St. Mary's Parish would accept the children of Ocean Township who are now attending other parochial schools;
6. That St. Mary's Parish install at its own cost and expense a sanitary sewer line to connect with existing sewer system according to specifications and places as determined by the Township Engineer. Further, that all main lines on existing streets be dedicated to the Township of Ocean; and
7. That the convent and parochial school shall be limited to the existing main building."
On examination of the ordinance adopted by the township, November 7, 1949, and under section 5, General Provisions, subdivision p-1 provides that a public school and play grounds in connection therewith are expressly permitted within the residential zone in question.
While the ordinance is silent in reference to parochial schools, under the Equal Protection Clause of the United States Constitution Amend. 14, and the State Constitution, Art. I, par. 1, legislation cannot be unequal, partial or discriminatory. It cannot treat members of the same class differently.
As stated in Washington National Insurance Co. v. Board of Review, 1 N.J. 545, at page 553, by Mr. Justice Heher of the New Jersey Supreme Court:
"The equal protection clause means that the right of all persons must rest upon the same rule under similar circumstances, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. * * * While the due process and equal protection guaranties are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation *73 or considerations of policy, and that there be uniformity within the class. The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed."
Yanow v. Seven Oaks Park, Inc., 11 N.J. 341 (1953), unanimously enunciated through Mr. Justice Burling that:
"Parochial schools, as the term is used in this ordinance, connote private schools, at which schools (in addition to religious instruction) students are given courses of study sufficient to qualify attendance thereat as compliance with compulsory education requirements. See R.S. 18:19-7. Thus they are in the juridical concept schools conducted by a religious order, but which provide grammar and high school training in accord with statutory requirements. They are therefore in the same general category as public schools for zoning purposes and are so grouped in the ordinance. Cf. In re Townsend, supra [195 N.Y. 214, 88 N.E. 41, at page 44, 22 L.R.A., N.S., 194]. This juridical concept is not new but has its foundation in our common law. * * *
"Therefore we have concluded that the sense in which the phrase `Public and Parochial Schools' was used in this ordinance includes elementary (grammar) and intermediate (high) schools, whether operated by the State or a religious organization, for the principal purpose of education of children of the community in those subjects or courses required under the statutes relating to compulsory education and religious instruction also in the case of parochial schools. It does not include trade or professional schools, colleges, seminaries or universities, which are excluded from the `A' residence district by the ordinance before us in view of the phraseology of section 2 (a) thereof."
St. Mary's Church could have sought a permit under p-1 of the ordinance instead of asking for a variance, but instead applied for a variance pursuant to the provisions of N.J.S.A. 40:55-39, subd. d. The statute, subsection d provides:
"The board of adjustment shall have power to: * * *
d. recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body * * * may by resolution, approve or disapprove such recommendation. * * *
*74 No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." (Italics mine.)
I have found few cases in this State which shed too much light on what is meant by "special reasons." The courts in this State (and as a matter of fact in some of the other states where I have searched for light) have not come out with a clear-cut definition and defined and delineated with any degree of exactness what constitutes "special reasons."
I am guided by what Judge Francis, then in the Appellate Division, said in Grimley v. Ridgewood Village, 45 N.J. Super. 574, at pages 581 and 582 (1957):
"No specific and comprehensive definition of `special reasons' has yet been pronounced in any of our cases. Obviously the term cannot conform to a slide rule or mathematical formula. As a basis for the grant of variances, it was intended to have a broader and more liberal significance than the `undue hardship' specified under subsection (c). Ward v. Scott, (I), 11 N.J. 117, 122 (1952). It seems sufficient to say that the determination as to the circumstances which will constitute special reasons is committed to the quasi-judicial discretion of the board of adjustment under the supervisory discretion (which seems to partake of both the judicial and the legislative) of the local governing body, to be exercised favorably to the relaxation of the restraint imposed only when it can be done without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance. N.J.S.A. 40:55-39. Each case depends on its own facts, Raskin v. Town of Morristown, 21 N.J. 180, 198 (1956), and it is well known that once the discretion of the municipal agencies has been utilized, the resultant variance is presumed to be regular and legal and the courts will not extinguish it unless the product of arbitrary, capricious or unreasonable action. Ward v. Scott (II), 16 N.J. 16 (1954)."
I find the following facts to have been sufficiently proven and in the light of the special reasons advanced and the supporting evidence the variance should be granted:
1. That Ivy Hedge is in Residential District A.
2. The zoning ordinance of the Township of Ocean, adopted November 7, 1949, under General Provisions, section p-1, permits public schools and playgrounds in District A.
*75 3. Ivy Hedge is a large structure on 16 acres of land in excellent condition, and few structural changes are required to the exterior to serve the intended use.
4. That the property is accessable to existing streets both front and rear.
5. A parochial school within the township would be of benefit not only to the residents sending their children to a parochial school, but would also promote the morals and the general welfare of the township.
6. Children now attending Holy Spirit School in Asbury Park from this township and surrounding area will be unable to attend a parochial school next year because of overcrowded conditions.
7. The use of the property with the conditions imposed and with the limitations is not detrimental.
8. The parochial school is reasonably necessary for the convenience of the community and would not adversely affect the value of the properties in the area.
I further find that the governing body of the Township of Ocean, acting upon the recommendation of the board of adjustment of said township, acted within the valid exercise of its powers in granting the defendant St. Mary's Church a variance to conduct in a residential zone a parochial school and a place for the nuns to dwell who teach in said school.
May I say that I offered Mr. Potter, attorney for the defendants, an opportunity to present any other evidence he may have had and which he may have wished to present before the Board of Adjustment before determining this matter.
The record, therefore, is barren of any evidence which would warrant me in finding that the action of the board of adjustment recommending favorably a school and a convent for the nuns was arbitrary and unreasonable or an abuse of discretion.
Mr. Justice Heher in Beirn v. Morris, 14 N.J. 529, 537, said:
"But we take occasion to reiterate the oft-repeated admonition that this power is committed by the statute to the expert discretion of the local administrative authority, and that judicial interference is permissible only for relief against arbitrary or capricious action and constitutes an abuse of the delegated discretion, and the judicial authority may not exercise anew the statutory jurisdiction and substitute *76 its own independent judgment for the specialized judgment of the agency entrusted by the Legislature with the administrative function."
Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Schmidt v. Board of Adjustment of Newark, 9 N.J. 405 (1952).
For the reasons herein expressed and the decisional law of our State the board of adjustment on the evidence adduced and for special reasons given was justified in recommending the granting of a permit for the use of Ivy Hedge as a parochial school subject to the stipulations and limitation contained in the resolution of the township committee.
Finally, I find that to permit the nuns who are to teach in said school to dwell on the premises is not unreasonable and that neither the school or the presence of the nuns living on said premises is detrimental to the health, safety and general welfare of the community.