OPINION OF THE COURT
Edward H. Lehner, J.
This is an application by petitioner for a judgment pursuant *843 to CPLR article 78 to annul a determination rendered by respondent which disapproved petitioner’s application for an on-premises liquor license, and to direct respondent to issue such license.
Gramercy Park Residence Corp. moves, pursuant to CPLR 7802 (d), for permission to intervene in this proceeding as a respondent, which application is granted without opposition.
In or about November 1990 petitioner applied for an on-premises liquor license with an additional bar for a business it operates known as "The Banana Cafe”, which is located in Manhattan at 111 East 22nd Street. Approval of the application was recommended by the New York City Alcoholic Beverage Control Board. On June 5,1991 the application was on the agenda of an open meeting held by respondent, at which several community groups, elected officials, and their representatives appeared and submitted documents in opposition. It was contended that granting the license would create noise and congested traffic conditions in the community, and that respondent was precluded by subdivision (7) of Alcoholic Beverage Control Law § 64 from granting the application because an entrance to the building owned and operated by the United Cerebral Palsy Foundation (the Foundation) as a school was located within 200 feet of the entrance to the subject premises. Respondent adjourned the matter until June 18, 1991 for further submissions.
In a decision dated July 12, 1991 respondent denied the application finding that the subject premises are located within 200 feet of the 22nd Street entrance to the Foundation building, and that this building was occupied "exclusively as a school for educational purposes”. In so ruling, respondent found that the building was used "predominantly as a school for educational purposes and that any incidental use of the building is not a use inconsistent with its dominant and primary purpose as a school”. However, it does not appear that any testimony was taken on this issue, the decision being based on letters and reports received. Respondent concluded that due to the close proximity of the subject premises and the school, Alcoholic Beverage Control Law § 64 (7) mandated the rejection in that the statute "expresses the legislature’s strong intention to afford protection to those attending educational and religious institutions and to keep them separate, apart, and a safe distance from premises serving alcoholic beverages”.
*844 Petitioner asserts that the rejection was arbitrary and capricious, and that respondent violated the law and its own internal guidelines in concluding that Foundation’s building was a "school”. Further it maintains that the issuance of a liquor license to Presto Limited Partnership in 1987, the previous occupant of the subject premises, grants it "grandfather” rights to a license at this time.
Alcoholic Beverage Control Law § 64 (7) prohibits the issuance of a retail license for on-premises consumption of alcohol "for any premises which shall be on the same street or avenue and within two hundred feet of a building occupied exclusively as a school, church, synagogue or other place of worship”.
Here the entrance to petitioner’s premises is located within 200 feet of the rear doors (on 22nd St.) of the Foundation’s building, whose main entrance is on 23rd Street. These doors serve the preschool handicapped children attending classes there. All of such preschoolers (who are said to number approximately 100) arrive either on crutches or in wheelchairs, are brought there in vans, and enter the building via a ramp leading to the rear doors.
In contending that the building may not be deemed a "school”, petitioner relies on a July 1945 "divisional order” of respondent. Such order, which purportedly is a guideline for respondent’s personnel, is said to limit the definition of a "school” to elementary and high schools. From this, petitioner argues that a preschool may not be deemed a "school” within the meaning of the legislation. The court disagrees.
The divisional order, in essence, merely excludes educational institutions above high school level and trade schools from the definition. This is in accord with the limitations stated in Matter of Townsend (195 NY 214 [1909]) and Matter of Hering (133 App Div 293 [2d Dept 1909], affd 196 NY 218 [1909]). There is nothing in the aforesaid order or court decisions that would indicate that students attending preschools, which were not common in 1945, were not entitled to the protection intended to be afforded by the 200-foot barrier. In the Townsend case (supra, at 222) the court noted: "The evident intention of the legislature was to remove the masses or our school-going children and youth as far as possible from the influences of the liquor traffic, and the most effective means of accomplishing this end was thought to be the interdiction of the traffic within a certain radius surrounding the ordinary schoolhouse.” While one might question whether this *845 barrier has accomplished its intended purpose, it has been in effect in almost identical form since the 1890s. Thus, I conclude that this legislative protection includes students attending institutions providing education at an age earlier than that normally provided by our public schools.
However, although I find that a preschool may be a school under Alcoholic Beverage Control Law § 64 (7), the evidence in the record does not support respondent’s conclusion that the Foundation building is in fact a school. I reach this result though aware that it has been said that statutory restrictions relating to churches and schools "must be liberally construed in their favor, and strictly against applicants for licenses to sell liquor” (Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., 245 App Div 176, 178 [4th Dept 1935], affd 270 NY 497 [1936]), and that respondent " 'is vested with wide powers and broad discretion’ ” (Matter of Steiert v Epstein, 15 AD2d 532 [2d Dept 1961]).
While Alcoholic Beverage Control Law § 64 (7) states that a building to be deemed a school, church or synagogue must be occupied "exclusively” for that purpose, "the judicial test applied to reach such determination ignores any incidental use of the building not inconsistent with its primary or dominant purpose”. (Matter of Multi Million Miles Corp. v State Liq. Auth., 55 AD2d 866 [1st Dept 1977], affd on mem below 43 NY2d 774 [1977]; see also, People ex rel. Cairns v Murray, 148 NY 171 [1896]; Matter of Trustees of Calvary Presbyt. Church v State Liq. Auth., supra; Matter of Fayez Rest. v State Liq. Auth., 66 NY2d 978 [1985].)
The record here is replete with letters in opposition from local elected officials, community boards and organizations, including petitions from hundreds of neighboring residents. In the letter in opposition submitted by the Foundation, the only information it provided with respect to the operation of its building was that daytime programs involve training classes for palsied handicapped children and adults, and that it also maintains evening programs for adults only.
In support of its application, petitioner submitted a report dated June 11, 1991 on the operation of the Foundation’s building prepared by Caroline Gomez Research Resources. In that report it is stated that the site is "comprised of dental and medical clinics, adult day training and vocational workshops, an adult rehabilitation center, a preschool age day program, an in-house print shop, Adult Day Services Adminis *846 tration, general building services and an outside vendor technology resource center”. It is indicated that approximately 350 adults are enrolled and participate in various programs offered at the facility; three dentists provide dental services to patients of all ages; and a clinic provides psychological treatment for adults.
Notwithstanding the fact that this report was noted by respondent in its July 12 decision, there is no discussion therein of its contents. It would seem that if the report is accurate, it could not be said that such activities are merely "incidental” to the operation of a "school”. Rather it would appear that the school is one of many activities conducted in a multiuse facility, and thus would not bar the issuance of petitioner’s application. (See, Brasero Rest. v New York State Liq. Auth., 176 AD2d 462 [1st Dept 1991] [auditorium of church used for baseball card and jewelry shows and rug sales, and portion of building rented to an embassy]; Matter of China City v New York State Liq. Auth., 19 AD2d 832 [2d Dept 1963] [parish house used partially for boy scout meetings, social affairs, and card parties]; Matter of Le Parc Gourmet v New York State Liq. Auth., 95 AD2d 855 [2d Dept 1983] [church building used partially by a theatre group and for a private teaching program and concerts]; Matter of Taft v New York State Liq. Auth., 84 AD2d 623 [3d Dept 1981] [church partially used by a rehabilitation program].)
However, since respondent took no testimony on the manner in which the building is used and made no findings with respect to the Gomez report, and since the record is not clear as to how much of the space of the facility is used for the aforesaid nonschool activities and whether the fact the Foundation’s facility consists of two separate buildings, this matter is remanded to respondent for a prompt hearing and determination as to whether the Foundation operates a separate building, whose entrance is within 200 feet of the entrance to petitioner’s premises, which is "occupied exclusively” as a school as that term is used in Alcoholic Beverage Control Law § 64 (7), as interpreted in the above-cited cases. (See, Matter of Coco’s Roller Rink v New York State Liq. Auth., 92 AD2d 487 [1st Dept 1983].)
Petitioner has failed to establish its alternate contention that it is entitled to have a license issued because of the prior issuance of a license for the subject premises which was never used.
*847 Finally, I believe that the current status of the law in this area warrants legislative review. If the purpose of the law is to provide protection against the influences of the liquor trade, why should a religious institution’s congregation or a school’s students, the objects of the purported protection, obtain such protection if the building is used solely for religious or educational purposes, but become subject to the evils against which protection is intended to be provided merely because the institution raises money by permitting its facility to be used at times for other purposes?