STATE FIRE MARSHALL v LEE

Docket No. 49219. Submitted June 5, 1980, at Grand Rapids.—Decided November 21, 1980. Leave to appeal applied for.

The State Fire Marshall petitioned Calhoun Circuit Court for an order directing David Lee to show cause why he should not comply with certain orders of the Fire Marshall. Paul Nicolich, J., following a hearing, ordered defendant to comply with the State Fire Marshall's findings of violations in defendant's modular classrooms and to correct the specified defects. In addition, defendant was ordered to allow post-remedy inspections of the buildings by the Fire Marshall. Defendant appeals, alleging that the circuit court erred in holding that the buildings in question were school buildings, that the church day school was subject to state school fire and safety regulations, and in admitting certain photographs into evidence. *Held:*

1. The buildings, when purchased, were in use as classrooms. They were subsequently remodeled for use as both a church and a church school. The buildings, as used, comport with the designation of school buildings under the Michigan Administrative Code for the purpose of applying school fire safety rules. As such, they are subject to those rules. The circuit court's holdings on this issue were proper.

2. State school fire safety regulations are designed to protect school children, and all schools including church day schools should meet reasonable safety requirements. The circuit court properly ruled that the church day school is subject to these rules. Such rules do not conflict with First Amendment rights.

3. The circuit court erred in admitting photographs of the doors of the buildings into evidence since there was an insufficient showing of relevancy, but the error was harmless, not having prejudiced defendant's case.

4. The finding of the circuit court that defendant must build

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4, 5] 13 Am Jur 2d, Buildings §§ 7, 18 *et seq.*
  68 Am Jur 2d, Schools § 4.
[3] 68 Am Jur 2d, Schools § 76.
[6, 7] 16A Am Jur 2d, Constitutional Law § 473.
  66 Am Jur 2d, Religious Societies § 1.

storage facilities for nonexistent combustible materials is reversed.

Affirmed in part, reversed in part, and remanded.

1. SCHOOLS — SCHOOL BUILDINGS — FIRE SAFETY RULES — DEFINITIONS — ADMINISTRATIVE CODE.

A school building for purposes of applying school fire safety rules is a building or structure used by six or more students for instruction; in areas where instruction is incidental to some other occupancy, the fire safety requirements for that occupancy apply (1973 AACS R 29.16[2]).

2. SCHOOLS — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — FIRE AND SAFETY REGULATIONS.

Different fire and safety regulations apply to churches and to schools; if a building is used as a church, the church fire and safety regulations should be applied, and if the building is used as a school, the school fire and safety regulations should be applied.

3. SCHOOLS — SCHOOL CHILDREN — SAFETY AND WELFARE — CONSTITUTIONAL LAW.

The state has a compelling interest to ensure the safety and welfare of all school children, and, in so doing, the state does not violate the free exercise clause or the establishment clause of the Constitution (US Const, Am I).

4. SCHOOLS — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH DAY SCHOOLS — FIRE AND SAFETY REGULATIONS.

A church day school is subject to school fire and safety regulations.

5. SCHOOLS — RELIGIOUS CORPORATIONS AND ASSOCIATIONS — RELIGIOUS SCHOOLS — FIRE AND SAFETY REGULATIONS.

Religious schools should meet reasonable fire and safety regulations which are applicable to all schools and which are applied equally to all schools.

6. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCHES — CHURCH ACTIVITIES — STATE REGULATION — COMPELLING STATE INTERESTS.

The definition of a church and church activities should be broadly interpreted for purposes of applying regulations; however, the state should not be precluded from imposing fire and safety regulations where a compelling state interest exists.

7. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — STATE REGULATION
— LEGITIMATE RELIGIOUS PRACTICES — SAFETY REGULATIONS.
    The state should not promulgate rules and regulations which
    interfere with legitimate religious practices; however, reason-
    able safety rules and regulations do not conflict with legitimate
    religious freedoms.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *James D. Nor-
lander,* Prosecuting Attorney, for plaintiff.

*Annis, Annis & Telman* (by *Timothy B. Visser),*
for defendant.

Before: R. B. BURNS, P.J., and MACKENZIE and
J. T. KALLMAN,* JJ.

J. T. KALLMAN, J. The defendant, David Lee, was
found to be in violation of the state's fire and
safety regulations in running a church-related
school, and was ordered by Calhoun Circuit Court
to correct the violations. Pastor Lee appeals as of
right.

The defendant purchased three modular class-
rooms from the Linden School District. These mod-
ular classrooms were used as classrooms and ap-
parently met state requirements:

"Q. Were they in fact in compliance with all State
regulations when they were used * * * as public school?

"A. Yes, sir. I have records on *[sic]* my file that I have
given all the various certificates of occupancy and so
forth to the Linden School District."

The buildings were then remodeled for use as a
church and a church school.

The Department of Education requested that the
State Fire Marshall inspect the buildings. After

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the inspection, the defendant was cited for basically five violations:

(1) No approved fire alarms (Rules 13 and 141),

(2) Lack of approved stairs, platforms or landings (Rule 95),

(3) Failure of the walls of the module to meet a minimum of Class "C" materials (Rule 122),

(4) No certificate of electrical approval (Rule 181), and

(5) No room with at least one hour retarding material for storage of combustible materials (Rule 153).

The defendant contends they are not above the law and that they have done the following:

(1) installed a fire bell,

(2) provided seven exit doors and fire doors,

(3) corrected electrical violations,

(4) stored no combustibles in the buildings,

(5) conducted regular fire alarm drills,

(6) enabled students to evacuate the buildings within 12 seconds,

(7) proceeded with the installation of handrails,

(8) installed panic bars on doors, which open on impact, and

(9) installed exit lights.

Secular courses are taught Monday through Friday with a Christian emphasis.

The first issue this Court must determine is: are these buildings school buildings?

The circuit court found that they were, and we concur.

"The definition of a 'school building' under the School Fire Safety Rules is given in R 29.16(2) of the Michigan Administrative Code as follows:

" 'School building' or 'building' means a building or

structure used by six (6) or more students for instruction such as a school, university, college or academy. In areas where instruction is incidental to some other occupancy, the fire safety requirements for that occupancy shall apply."

There is no question in this Court's opinion that these children are receiving secular instruction with a Christian emphasis under the A.C.E. program. Whatever words or semantics we engage in, the buildings constitute a school. As a school they are subject to the fire and safety regulations of the State. As the defendant's attorney, Mr. Craze, stated in argument:

"Now the church has never said it is above the law. It has never said that, and does not say that today."

The defendant argues that the church will comply with fire regulations for the primary purpose of the buildings and that the primary purpose is to serve as a church. The argument then flows to the discussion of the word *incidental.* Defendant argues that the church school is incidental to the propagation of the Christian faith, and, having met the fire and safety requirements for a church, this encompasses and permits all incidental uses of the buildings, including use as a church day school. In fact, the pastor calls it a church-related school and a Christian day school. The lawyers and circuit court judge spend a great deal of time discussing the word *incidental.* There is no question from the record that the school is an *integral* part of the ministry of the church. There is no question that a school of this nature is usually connected with a church.

For the generally understood legal definition of

*incidental,* we turn to Black's Law Dictionary, (4th ed), pp 904-905:

"Incidental. Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose."

A church school is not incidental to the church's ministry—it is an integral part of the ministry, yet separate and distinct. The fire and safety regulations treat a church and a school separately. If a building is used as a church, the church fire and safety regulations apply. If as a school, the school fire and safety regulations apply. This building is used primarily as a school, so the latter apply. There is a compelling state interest to ensure the safety and welfare of all school children. In ensuring the safety of school children, the state is not violating the free exercise clause of our Constitution nor its establishment clause. This Court cannot prevent the teaching of the scriptures in a church, its Sunday school, during youth hours or prayer meetings, in its church day school, etc. This is protected by our First Amendment.

The next question we must address is: Is a church day school subject to the fire and safety regulations for a school?

This Court must answer in the affirmative. These laws are for the protection of students, not for the protection of a church day school. There is a legitimate state interest to ensure such safety, which does not interfere with a church day school's uses. The compelling interest is the safety of the children. It is interesting to note that Det. Sgt. James L. Haehnle stated that the building was unsafe for 17 people Monday through Friday. Yet, the building meets code requirements for

Sunday morning services when 90-100 people are in attendance. Mr. Haehnle stated that you have to use common sense in your inspections. The record indicates that these buildings were safe when used by the Linden School District for their children. When used by the Liberty Baptist Church day school for their children, the same buildings are unsafe. Somehow, this logic escapes this Court. If it was safe for public school children, what suddenly makes it unsafe for church school children? Common sense? There would appear from this record to be a different set of standards to be applied to the Linden School District and to the Liberty Baptist Church. This could appear in some minds to be harassment of the Liberty Baptist Church, a religious school, or the answer could be that the state didn't inspect the buildings while at Linden. If the latter is the case, one wonders about the state's concern for the safety of children in a public school.

Mr. Haehnle stated that one must use common sense in applying the standards set. What is their purpose? Obviously, the purpose of the standards is the safety of children. At Liberty Baptist School they are able to evacuate everyone in 12 seconds. I doubt that any public school can evacuate their students in 12 seconds. There are from five to seven exits with panic bars, so that everyone can escape almost immediately. It would appear that Liberty Baptist Church clearly is as concerned as the state for the safety of their children. Mr. Haehnle stated that to save lives is more important than regulations. Will a correction of the existing violations speed up the evacuation of the building? This Court seriously questions this.

Let's proceed to analyze the violations. The violation of Rule 153 seems absurd when the record

clearly shows that no combustibles, except paper, are stored on these premises.

The violation of Rule 95 was substantially cured at the time of trial.

This leaves us with three violations out of five. The violation dealing with lack of a fire alarm (Rules 23 and 141) was apparently corrected by Pastor Lee with the installation of a fire alarm. Yet no one checked it to see if it met U. L. Standards. If it is not approved, the violation would still exist. If it's approved, there is no violation.

As to the two remaining violations, they have not been corrected.

We are, in reality, talking about regulations which probably will not speed up the evacuation of the children from the buildings. However, the fire alarm should give quicker notice to all if a fire occurs, thus aiding in the evacuation of the buildings.

The correction of the building walls to Class "C" material might or might not give more notice or time. It will obviously not reduce the evacuation time of 12 seconds. The lack of electrical approval will not speed up the evacuation time. The record is silent as to these points.

After analyzing these violations, the Court concludes that there are three violations that should be corrected pertaining to the electrical certificate, the walls, and possibly the fire alarm. One violation charged has not been proven—need for a combustible storage room. The defendant has substantially complied with the order to remove the violation on this record regarding the outside stairs, platform, and handrails.

*All schools* should meet reasonable safety requirements for children entrusted to their care. Mr. Craze admits that the defendant's church is

not above the law. The Christian faith, as propagated by Liberty Baptist Church, requires submission to those in positions of authority. Romans 13:1-5, 7, reads:

"Let every soul be subject unto the higher powers. For there is no power but of God: the powers that be are ordained of God.

"Whosoever, therefore resisteth the power, resisteth the ordinance of God: and they that resist shall receive to themselves damnation.

"For rulers are not a terror to good works, but to the evil. Wilt thous then not be afraid of the power? Do that which is good and thou shalt have praise of the same:

"For he is the minister of God to thee for good. * * *

"Wherefore *ye* must needs be subject; not only for wrath, but also for conscience' sake. * * *

"Render, therefore, to all their dues: tribute to whom tribute is due; custom to whom custom; fear to whom fear; honour to whom honour."

Matthew 22:19-21:

"Shew me the tribute money. And they brought unto him a penny.

"And he saith unto them, whose is this image and superscription?

"They say unto him, Caesar's. Then saith he unto them, render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's."

These verses clearly delineate a Christian's responsibility to obey his government, except where there is direct conflict with his obedience to God. No such conflict appears in the record of this case.

The safety of children is important to our government and equally important to Christians. The requirements for safety are there. They do not

conflict with Christian principles. Therefore, Christians must comply with the fire and safety regulations which are applicable to *all* schools and which are applied equally to *all* schools.

Did the circuit court err in admitting into evidence photographs of the doors to the building? This Court finds that the photographs were admitted in error and that the court abused its discretion in admitting the photographs. There was an insufficient showing of relevancy for their admission as required under MRE 402. While the admission of these photographs was error, the error was harmless. The error did not prejudice the defendant's case and is not a cause for reversal. *State Highway Comm v Cronenwett,* 52 Mich App 109; 216 NW2d 597 (1974). The record does not support or indicate that the photographic evidence played any role in its decision. A careful review of the record shows that, after the pictures were admitted into evidence, no further evidence was introduced concerning them.

All the cases cited by the appellants in this area deal with the definition of a church, worship practices, and definitions of what activity is to be included within the province of a church. They also deal with state actions attempting to prohibit, restrict, or infringe on the religious activities of a church.

This Court concedes and agrees that the term church should be broadly interpreted, as has been made evident by the cited cases. However, this does not preclude the state from becoming involved where a compelling state interest exists. The safety of a state's citizens, including children, is a compelling state interest, permitting intervention under its police powers. However, such governmental actions are to be carefully weighed and

closely scrutinized by our courts to prevent governmental misuse. We must recognize that the definition of a church and its activities does not permit a carte blanche use of the property and its activities without any governmental scrutiny or controls of any kind. What is to be prevented is the willful promulgation of rules and regulations by the state interfering with legitimate religious practices. These First Amendment rights must be jealously guarded and protected.

However, reasonable safety rules and regulations do not conflict with legitimate religious freedoms.

The finding of the circuit court that the defendant must build a storage closet for combustible materials which do not exist is reversed.

As to the findings of the circuit judge regarding the stairs, platforms, or landings in the buildings and the fire alarm violations, the evidence was inconclusive as to whether or not the defendant had complied with the fire marshall's directives. Therefore, the matter is remanded to the circuit court to take additional testimony which will enable it to make a definitive ruling.

As to the remaining two violations, the findings of the circuit court are affirmed.

No costs, a public question being involved.

MacKenzie, J., concurs in result only.