BOYS' CLUBS OF DETROIT *v.* PAKULA.

1. Intoxicating Liquors—Paramount Rights of Schools and Churches—Distance to Liquor Establishments.

   The provision of the liquor control act relative to distance of liquor establishments from schools and churches must be liberally construed to preserve the paramount rights of the schools and churches (CL 1948, § 436.17a, as amended by PA 1949, No 106).

2. Schools and School Districts—Definition of Schools.

   A school is a place for instruction in any branch or branches of knowledge, an institution for teaching children, with educational purposes or activities.

3. Intoxicating Liquors—Schools—Distance From Liquor Establishments.

   A club consisting of a 2-story building resembling a public school building and containing classrooms, gymnasium, swimming pool, locker rooms, library, auditorium and stage, print shop, woodworking shops, art room and special events room and which is used daily by an average of 600 boys from 7 to 21 years of age living within a mile and a half therefrom, constituted a "school" within the liquor control act proscribing establishment of a place for the sale of liquor within 500 feet of schools and churches, the term "school" not being restricted in such act to institutions teaching subjects required by law to be taught (CL 1948, § 436.17a, as amended by PA 1949, No 106).

---

References for Points in Headnotes

[1] 30 Am Jur, Intoxicating Liquors §§ 343–347.
[2, 3] 30 Am Jur, Intoxicating Liquors § 346.
    47 Am Jur, Schools § 2.
[4] 30 Am Jur, Intoxicating Liquors § 347.
[4] Mode of measurement and computation of distances for purposes of statute or ordinance which prohibits sale, or license for sale, of intoxicating liquor within given distance from church, university, school, or other institution or property as a base. 96 ALR 778.
[5] See, generally, 30 Am Jur, Intoxicating Liquors §§ 127, 506, 507.

4. SAME—MEASUREMENT OF DISTANCE BETWEEN SCHOOL AND LIQUOR
   ESTABLISHMENT—MAIN ENTRANCE.

   The measurement of distance between a school and a place where
   it is sought to establish a place for the sale of intoxicating
   liquor is to be made from a point on the center line of a
   street as intersected by lines from the nearest part of each
   structure projected at right angles to the center lines, no
   attention being paid as to whether or not the nearest portion
   may be an entrance to the structure (CL 1948, § 436.17a, as
   amended by PA 1949, No 106).

5. INJUNCTION—LACHES—TRANSFER OF LIQUOR LICENSE—SCHOOLS.

   Plaintiff school was not guilty of laches in suit to enjoin transfer
   of class "C" license to a place within 500 feet of the school,
   where objections were first made by its officials when they
   were contacted by the liquor control commission and by the
   police department and defendant licensee failed to sustain
   his burden of proof as to laches.

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—INJUNCTION—
   TRANSFER OF LIQUOR LICENSE—PROXIMITY TO SCHOOL AND CHURCH.

   Whether or not trial court was in error in determining that
   church was more than 500 feet from place where defendant
   licensee proposed to transfer his class "C" license, by reason of
   near location of parish house, is not determined, where
   defendant is enjoined from using the location for such purpose
   by reason of its proximity to a school (CL 1948, § 436.17a,
   as amended by PA 1949, No 106).

Appeal from Wayne; Ferguson (Frank B.), J.
Submitted January 11, 1955. (Docket No. 36, Cal-
endar No. 46,323.) Decided March 9, 1955.

Bill by Boys' Clubs of Detroit, a Michigan non-
profit corporation, George L. Nankervis and Zion
Lutheran Church against Benny J. Pakula, the
Liquor Control Commission of the State of Mich-
igan, and its members, to enjoin transfer of Class
"C" license to location in close proximity to school
and church. Decree for plaintiffs. Defendant Pak-
ula appeals. Plaintiff church cross-appeals. Af-
firmed.

*Butzel, Eaman, Long, Gust & Kennedy (Philip T. Van Zile, of counsel), for plaintiffs.*

*Stanton, Sempliner, Dewey & Knight, for defendant Pakula.*

Kelly, J.   Three questions are presented in the appeal of defendant and appellant Benny J. Pakula:

(1) Was the southeast corner of Michigan and Military avenues, where appellant Benny J. Pakula sought to operate a bar under a class "C" liquor license, less than 500 feet from the Boys' Club of Detroit?

(2) Was the Boys' Club of Detroit a "school" within the meaning of section 17a of the liquor control act* which provides "any request to transfer location of an existing license, shall be denied in the event the contemplated location is within 500 feet of a church or a school building"?   and

(3) Does laches on the part of the plaintiffs and appellees estop them from enjoining the transfer of the class "C" license?

At the hearing before the circuit court the assistant attorney general representing the defendant liquor control commission and its members advised the court that they were "not taking sides in this matter at all," and were willing to abide by whatever decision the court might make in the case.

Appellant Pakula contends that the legislature intended "schools" to be restricted to institutions teaching "subjects required by law to be taught to children of that age."   Appellees contend that the legislature inserted no such restrictive language and that the purpose of the act was "to protect those of

---

* PA 1933 (Ex Sess), No 8, § 17a, as added by PA 1945, No 133, and amended by PA 1949, No 106 (CLS 1952, § 436.17a, Stat Ann 1953 Cum Supp § 18.988[1]).

tender years attending institutions contributing to the educational needs of a community."

The club was organized in 1926 as a nonprofit corporation for the purpose of promoting the physical, mental and moral well-being of the boys of Detroit by providing such means of education and amusement as the directors deemed advisable. Its corporate name now is Boys' Clubs of Detroit.

One of the 3 buildings operated by the Boys' Club is the building involved in this appeal, known as the Bloomer building, located at 3910 Livernois. This is a 2-story building resembling in appearance public school buildings, and contains classrooms, gymnasium, swimming pool, locker rooms, library, auditorium and stage, print shop, woodworking shops, art room and special events room. For convenience, the building affected by this litigation is referred to as the Boys' Club.

Over 2,300 boys between the ages of 7 and 21 are enrolled at the Bloomer building Boys' Club; 900 in the 7-to-10-year-old class; 700 in the 11-to-13-year-old group, there are 500 in the 14-to-17-year-olds, and the senior membership, 18 to 21 years of age, is 150.

The average number of boys using this building daily is about 600, and all of the members live within a radius of a mile and a half of the building. The Boys' Club hours are Monday through Friday from 3:30 to 9:30 p.m., and on Saturdays from 10 a.m. to 4 p.m.

The Boys' Club has a schedule of regular hours for classes in music, woodworking, photography, arts and crafts, printing, motion picture projection, dramatics, radio and television. A physical education program consisting of basket ball, baseball, football, swimming, boxing and wrestling is provided. There is also a health program under the supervision of a full-time doctor, dentist and nurse. The

educational program is supervised and carried forward by a full-time staff of 14 paid employees.

. In determining this question as to what is meant by the word "school" we must keep in mind the fact that in *Morse* v. *Liquor Control Commission,* 319 Mich 52, 65, this Court said. that the act must be liberally construed to "preserve the rights of schools and churches as provided for" in the act as this Court regards such rights as paramount.

Webster's New International Dictionary (2d ed) defines "school" as "a place for instruction in any branch or branches of knowledge;  *  *  *  an institution for teaching children."

We have carefully considered the cases cited in appellant's brief; among which is *Matter of Townsend,* 195 NY 214 (88 NE 41, 22 LRA NS 194), holding that a liquor law prohibiting the location of a place for the sale of liquor within 200 feet of a school would not include a building used as a training school for nurses. In this case the New York court stated (pp 222, 223):

"This phase of the statute indicates that the legislature, in using the term 'schoolhouse,' had in view primarily the common public schools devoted to such general elementary and intermediate instruction as is adapted to the education of our children and youth; and perhaps secondarily such semipublic and private schools as are conducted for the same purpose. Broadly classified this includes all 'schoolhouses' in which our so-called grammar and high schools are conducted. While we can find no express warrant in the words of the statute for placing private and semipublic schools in the same category with common public schools, we are satisfied that it was not the intention of the legislature to exclude the former from its wholesome protection. That is the utmost limit, however, to which the language of the statute can be extended. The evident intention of the legislature was to remove the masses of our

school-going children and youth as far as possible
from the influences of the liquor traffic, and the most
effective means of accomplishing this end was
thought to be the interdiction of the traffic within a
certain radius surrounding the ordinary school-
house. It is obvious that, unless we draw a line with
reference to schoolhouses at the point thus indi-
cated, we must go to the extreme length of holding
that the term 'schoolhouse' includes every place
where instruction is given of any kind or degree, and
to persons of any age. These considerations, applied
to the conceded facts of this case, lead us to conclude
that a building used as a training school for nurses
is not a schoolhouse within the purview of the liquor
tax law."

We have also considered the following cases cited
in appellees' brief giving to the word "school" a
broader construction, particularly where instruction
is imparted to the young: *People* v. *Collins,* 191 Misc
553 (83 NYS 2d 124); *Livingston* v. *Davis,* 243 Iowa
21 (50 NW2d 592, 27 ALR2d 1237); *Langbein* v.
*Board of Zoning Appeals of the Town of Milford,*
135 Conn 575 (67 A2d 5).

This Court was called upon to define the word
"school" in *Bastendorf* v. *Arndt,* 290 Mich 423 (124
ALR 445). In that case we said (pp 425, 426):

"There is no serious question that defendant is
conducting a 'school.' The word is a generic one
and, where not affected by its context, means little
more than an institution with educational purposes
or activities. Although defendant is teaching for
profit, she is engaged in the promotion of a partic-
ular branch of knowledge. * * * It is not con-
tended that because the student body is small or be-
cause the course of study is devoted more to the arts
than to the sciences that the establishment does not
fulfill the requirements of an educational institu-
tion."

We reaffirmed this decision last year when in *Norton School District* v. *Municipal Finance Commission,* 339 Mich 96, we said:

"The word school means little more than an institution with educational purposes and activities. *Bastendorf* v. *Arndt,* 290 Mich 423 (124 ALR 445). Education, principally and primarily of the children of the district, is the one general objective of the plaintiff."

Appellant contends that the *Bastendorf Case* should not apply to the present case because it was a case involving building restrictions. We cannot agree with this contention. There is no reason why the word "school" should receive a more restricted definition under the act in question than in building restriction cases.

The statute here involved does not construe the word "school." If the legislature had intended "school" to be restricted to institutions teaching subjects required by law and thereby confined to public and parochial schools, the legislature would have so provided. The record justifies the trial court's decision that "the Boys' Club is a school within the meaning of the word as it is used in the liquor law."

The Boys' Club building in question is located on land bounded by 2 streets that run north and south, namely, Livernois avenue and Military avenue. The front entrance of the school is on Livernois.

The original liquor control act of 1933 contained no restriction as to the proximity of a liquor establishment to a church or school building. The legislature by PA 1945, No 133, added section 17a to said act, which read as follows:

"Any new application for a license to sell alcoholic beverages at retail, or any request to transfer location of an existing license, shall be denied in the event the contemplated location is within 500 feet

of a church or a school building, by the regularly
traveled thoroughfare."

By PA 1949, No 106, the legislature eliminated the
words "by the regularly traveled thoroughfare," and
substituted the following:

"Such distance between the church or school build-
ing and the contemplated location shall be measured
along the center line of the street or streets between
2 fixed points on said center line determined by pro-
jecting straight lines, at right angles to the said
center line, from the part of the church or school
building nearest to the contemplated location and
from the part of the contemplated location nearest
to the church or school building."

Appellant submits "that ambiguity is present in
the application of the statute. The statute does not
purport to say what is the nearest part of the school
building. Is such to be determined mathematically,
or is such part to be determined with regard to the
main entrance?"

Appellant contended in the lower court and here
contends that the measurement should have been
made by projecting a line at right angles from the
northerly part of the school building fronting on
Livernois avenue (front entrance) to the center line
of said avenue, thence north on Livernois to the
center line of Michigan avenue, thence southeast
along the center line of Michigan avenue to the
center line of Military avenue, thence south to a
right angle projected from the nearest point of ap-
pellant's contemplated location. It is conceded that
if this is the proper way to measure, appellant's
property is more than 500 feet distant from the
Boys' Club building.

The trial court held that appellant was in error in
his construction as to how the measurement should
be made, and concluded that the nearest part of the

Boys' Club was the northeast corner of the building (rear); that by drawing a line from this point to the center of Military avenue and then measuring north to appellant's contemplated bar would be the proper way to determine the distance between the Boys' Club building and appellant's location. It is conceded that using this method the distance would be 223.28 feet.

A similar question was presented to this Court last year in the case of *Elliott* v. *Liquor Control Commission*, 339 Mich 78. Commenting upon the construction of section 17a this Court said:

"A former attorney general had ruled, 'Measurement should commence on the center line of the street on which is located the main entrance of the building.'

"The designation of the regularly travelled thoroughfare as having a part in determining the measurement of 500 feet was stricken out of the statute by PA 1949, No 106, and the defendant commission was in error in applying the ruling of the attorney general so far as expressed in the words just above quoted, which ruling is incorrect under the present form of the statute. ·

"The location of the entrance to either building is to be disregarded, not being an element in the statute."

We reaffirm that decision in this case. The location of the entrance to the building is to be disregarded, not being an element in the statute. The trial court used the proper method of measuring the distance between the Boys' Club and appellant's location, and was correct in determining that appellant's location was within 500 feet of the Boys' Club.

The record does not sustain appellant's claim that plaintiffs were guilty of laches estopping them from enjoining the transfer of appellant's liquor license. The question was first raised by the defendant in his

answer as an affirmative defense and was denied by plaintiffs in their reply. The burden of proving laches was on the defendant, but no evidence was introduced to support this claim. Certain allegations in regard to the publishing in newspapers of the application for transfer of license and the construction of the building by defendant on the disputed site are referred to in appellant's brief, but are not supported by the record. The record discloses that the Boys' Club objected to the bar when its officials were contacted by the liquor control commission in the spring of 1952 and by the Detroit police department in January, 1953.

Zion Lutheran Church, a Michigan nonprofit corporation, an appellee and cross appellant herein, contends that the court erred in determining that the church was 532.50 feet distant from the bar. Its contention that the parish house is a church building and within 500 feet of the bar is not passed upon in this opinion due to our decision that the Boys' Club is within 500 feet of appellant's contemplated bar and that the lower court's decree should be affirmed enjoining the liquor control commission from approving transfer of class "C" license to appellant at said premises.

Judgment affirmed. Costs to appellees.

Carr, C. J., and Smith, Sharpe, Boyles, Reid, and Dethmers, JJ., concurred.

Butzel, J., did not sit.