HOOD, Judge.
This is a mandamus suit instituted by The Southland Corporation against the City of Lafayette, and the Mayor, the Police Chief and the Collector of Revenue of that city. Plaintiff seeks a judgment directing defendants to grant a permit authorizing The Southland Corporation to sell alcoholic beverages in a store owned and operated by it in Lafayette. The First Baptist Church of Lafayette intervened, joining defendants in resisting plaintiff’s demands. The trial court rendered judgment rejecting plaintiff’s demands, and plaintiff appealed.
The issue presented is whether interve-nor, the First Baptist Church of Lafayette, was operating a “school” within 300 feet of plaintiff’s store, and thus whether the Lafayette Code of Ordinances prohibits the sale of alcoholic beverages at the location of that store.
On or about September 17,1976, plaintiff applied to defendants for the issuance of a Class “B” Package House permit, authorizing it to sell alcoholic beverages at a store owned and operated by it at 410 University Avenue, in Lafayette. The application was denied on or about October 4, 1976. The reason given by defendants for refusing to grant the permit was that plaintiff’s store was located within 300 feet of a “school” being maintained by the First Baptist Church of Lafayette, and that Sections 5-19 and 5-48 of the Lafayette Code of Ordinances prohibits the sale of alcoholic beverages that close to a school.
The Lafayette Code of Ordinances provides that before a permit to sell alcoholic beverages can be issued it must be shown that there is no violation either of Section 5-19 of the Code of Ordinances (relating to the sale of liquor) or of Section 5-48 (relating to the sale of beer). The cited sections deal with the proximity of the premises to schools and churches. The language used in both sections is practically identical. Section 5-48 reads as follows:
“It shall be unlawful for any person to sell any of the beverages herein referred to within a distance of three hundred (300) feet of any school, except a business college or school, said distance to be measured as a person walks using the middle of the sidewalk from the nearest point of the property line of the school to the nearest point of the premises where such beverages are sold. It shall also be unlawful for any person, firm, or corporation to sell any of the liquors or beverages herein referred to within a distance of one hundred seventy-five (175) feet of any church, said distance to be measured in the same manner as is provided for schools.” (Emphasis added).
*1286 Plaintiff instituted this suit to compel defendants to issue the permit which it seeks. It concedes that intervenor owns property near its store, but it contends that the property is being used solely for “church” purposes, and that it is not being used for the operation of a “school,” as that term is used in the above cited sections of the Lafayette Code of Ordinances.
The evidence shows that the First Baptist Church owns property located near plaintiff’s store, the distance between the store and the nearest point on the church property being 215 feet. The church property thus is more than 175 feet, but less than 300 feet, from the premises of the Southland Corporation where the alcoholic beverages are to be sold.
On the church property there are various improvements, including a church building and at least two other buildings, one of which contains a gymnasium and the other contains classrooms. The gymnasium and the classroom building are connected. The building with the classrooms bears a cornerstone with the title “Education Building,” and on the exterior of the building there is a sign labeled “First Baptist Church Education Building.” Of the buildings on inter-venor’s property, the church proper is situated farthest away from the premises proposed for licensing.
All parties stipulated that the actual use of the First Baptist Church facilities is correctly set out in a letter written by the pastor of that church to its attorney on September 27, 1976, which letter is in the record. That letter states, in substance, that the “Personnel of the School” consists of the following: (a) Seven full-time, professionally trained employees, who are responsible for curriculum, schedules, teacher enlistment and pupil promotion for the education activities carried on in the church facilities, two of those employees possessing advanced degrees in education; (b) two part-time employees, both of whom are certified teachers in Louisiana; and (c) 188 volunteer or part-time workers, eight of whom have doctorates and 69 of whom are certified Louisiana teachers.
The buildings were used for “school functions” the major part of every month, including the summer months, during the calendar year 1975. They were used for that purpose a total of 278 days that year, or an average Of 23 days each month during the entire 12 month period.
At the time the above letter was written, a total of 1,491 pupils were enrolled in a continuing weekly study. 1,448 pupils were enrolled in an intensive daily school during July and August, and 413 were enrolled in another weekly study. Eight school buses are provided to transport children to the school.
Most of the children are of Baptist background. Of the 1,448 enrolled in the daily school during July and August, 1976, about 800 were Baptists, 300 were Catholics, 75 were Methodists, and the remainder were from several other denominations, including Muslims and Buddhists.
With reference to the curriculum, the letter states:
“A. Preschool
“When preschool children are being taught in the facilities, we utilize the total teaching concept of child development, including Bible knowledge, nature study, physical growth, motor skills, community relations, elementary art, social behavior and reading readiness.
“B. Grades 1 Through 12
“Grades 1 through 12 have a wide variety of course offerings, including Bible study, history, vocational training, drama, music, puppetry, camping, missionary activity, eschatology, dactylology (sign language for deaf), beginner and advanced classes.
“C. College Age and Above
“College age and above have a wide choice of curricular — Bible study, Baptist history, social ethics, specialized seminars on wills and trusts, eschatology, dactylol-ogy (sign language for deaf), beginner and advanced classes, etc.
“D. Recreation
“Preschool and younger children take full advantage of the small playground *1287 and gym area for their elementary athletics.
“From the Third Grade on up, we have organized sports including basketball, skating, etc. They are organized into three basketball leagues, using the gym facility several days weekly during the season.”
The educational activities conducted on the First Baptist Church property are not regulated or controlled by any local, state or federal governmental authority, and they are not subject to the accreditation requirements of the Louisiana State Board of Elementary and Secondary Education.
On the basis of the above facts, the trial judge concluded that the First Baptist Church was operating a “school” within 300 feet of plaintiff’s premises, and that the Lafayette Code of Ordinances thus prohibits the sale of alcoholic beverages on those premises.
Plaintiff, contending that the trial judge erred, maintains that the activities conducted by the First Baptist Church on its premises do not constitute the operation or maintenance of a “school,” as that term is used in the above cited sections of the Lafayette Code of Ordinances. To support that argument, plaintiff argues (1) that all of the educational programs conducted on those premises are “geared toward a religious goal,” and that they thus are church, rather than school, activities, (2) that those activities are not required or controlled by any local, state or federal agency, and (3) that the educational activities of the church are not subject to the accreditation requirements of the Louisiana State Board of Elementary and Secondary Education.
We have concluded that the activities conducted on the church premises constituted the operation or maintenance of a “school” on those premises, as that term is used in Sections 5-19 and 5-48 of the Lafayette Code of Ordinances.
The word “school” is properly defined, we think, as an institution or place for instruction or education, or as an organization that provides instruction, or as an organized body of scholars and teachers associated for the pursuit and dissemination of knowledge. See Black’s Law Dictionary, Fourth Edition; Webster’s New Collegiate Dictionary; and Webster’s Third New International Dictionary. The following definition is given in 78 C.J.S. Schools and School Districts § 1, page 605:
“The word ‘school’ is a generic term of many definitions, denoting an institution or place for instruction or education, or the collective body of instructors and pupils in any such place or institution. A school is not measured by the walls of a building, and two or more schools may exist in the same building; but, on the other hand, a school is single and entire notwithstanding it is held and conducted in two or more buildings. The number of persons being taught does not determine whether the place is a school.”
In Lichentag v. Tax Collector of First Dist., 46 La.Ann. 572, 15 So. 176 (1894), plaintiff used his property exclusively as his residence and for conducting a school of stenography and typewriting. Our Supreme Court held that the property was not being used exclusively for “colleges or other school purposes,” and that it thus was not exempt from taxation. The court observed, however, that the word “school,” as used in the statute applied to “ordinary schools, such as we know in common speech, educational establishments below the grade of college, in which elementary knowledge is imparted; such institutions are for the purpose of instructing young people and are known as primary or common schools or academies; such institutions are for acquiring knowledge and mental training.”
The issues presented in Boys’ Clubs of Detroit v. Pakula, 342 Mich. 150, 69 N.W.2d 348 (1955), are similar to those which are before us here. In that case the Supreme Court of Michigan held that the Boys’ Club was operating a “school,” within the meaning of a statute which prohibited the sale of alcoholic beverages within 500 feet of a school. The curriculum of that school consisted of regular hours of classes in music, woodworking, photography, arts and crafts, *1288 printing, motion picture projection, dramatics, radio and television and a complete physical education program. The court rejected the idea that the Legislature intended to restrict the meaning of the word “schools” to institutions teaching “subjects required by law to be taught to children of that age.” The full intent of the law, the court said, was to “protect those of tender years attending institutions contributing to the educational needs of a community.”
The same court, the Supreme Court of Michigan, also held in Bastendorf v. Arndt, 290 Mich. 423, 287 N.W. 579 (1939), that the words, “schools and churches or other public buildings,” as used in a zoning ordinance, included a private school of dance and drama which was conducted for profit.
The case of City of Chicago v. Bethlehem Healing Temple Church, 93 Ill.App.2d 303, 236 N.E.2d 357 (1968), involved the interpretation of a city ordinance which required the installation of sprinkler systems in schools. The reviewing court held that the defendant church was operating a “school,” within the meaning of that ordinance, since 350 children of church members took courses in religious instruction regularly on the third and fourth floors of the church building. The instructors were church members who served without compensation.
Plaintiff relies on In Re Townsend, 195 N.Y. 214, 88 N.E. 41, 49 A.L.R.2d 1109 (1909), which involved a statute prohibiting the traffic in liquor within 200 feet of “a building occupied exclusively as a church or schoolhouse." The Court of Appeals of New York held that a training school for nurses, which admitted as student nurses only women who were 23 years of age or older, was not a “schoolhouse,” as that term was used in the statute. The court said:
“The evident intention of the Legislature was to remove the masses of our school-going children and youth as far as possible from the influences of liquor traffic, and the most effective means of accomplishing this end was thought to be the interdiction of the traffic within a certain radius surrounding the ordinary schoolhouse. . . . These considerations, applied to the conceded facts of this case lead us to conclude that a building used as a training school for nurses is not a schoolhouse within the purview of the liquor tax law.”
We have considered the facts in the instant suit with the above authorities in mind.
It is true, as pointed out by plaintiff, that a substantial part of the educational program being conducted by intervenor is “geared to a religious goal.” We do not agree, however, that the extensive program of training and education conducted by the First Baptist Church constitutes only a church activity. The curriculum for preschool age children includes such things as nature studies, motor skills, community relations, elementary art, social behavior and reading readiness. For elementary and high school children, it includes studies of history, vocational training, drama, music, puppetry and camping. These courses are designed to train, educate and develop children along secular as well as religious lines. Although the curriculum may not be as complete as that required for an accredited elementary or high school, it clearly is designed for the pursuit and dissemination of knowledge, and it thus fits the definition of a “school.”
Plaintiff has cited no authority to support its argument that the institution of learning being maintained by intervenor must be regulated or controlled by a government agency, or it must be accredited by the State Board of Elementary Education, before it can be held to be a “school.” We have considered the argument that chaos may result if the word “school,” as used in the above ordinances, is interpreted to include unregulated or unaccredited institutions of learning. We are not convinced, however, that our holding in this case will be as disastrous as plaintiff feels it will be. In our opinion, the determination of whether an institution may reasonably be held to be a “school,” within the meaning of ordinances similar to the one which is before us now, must be made on *1289 the facts of each particular case. Our holding here is that an institution may be held to be a “school,” under the cited provisions of the Lafayette Code of Ordinances, even though that institution is not controlled or regulated by a governmental agency and despite the fact that it is not an accredited school.
The obvious purpose of the governing authority of the City of Lafayette in enacting Sections 5-19 and 5-48 of that city’s Code of Ordinances was to remove school children, at least to some extent, from the undesirable effects or influences which may flow from the sale of liquor in close proximity to schools. We think the intent was to extend that protection to children who regularly attend all institutions of learning which reasonably may be held to be schools, even though those institutions may not be regulated or accredited by governmental agencies.
Our conclusion is that intervenor, the First Baptist Church, is maintaining a “school” on its property, as that term is used in Sections 5-19 and 5-48 of the Lafayette Code of Ordinances, and that it was conducting a school at that location when plaintiff applied for a permit to sell alcoholic beverages. Plaintiff’s store is located within 300 feet of that school, and the sale of alcoholic beverages at that location is prohibited by the above ordinances. We find no error in the judgment of the trial court, therefore, which rejects plaintiff’s demands.
Since we have determined that interve-nor was maintaining a school on its property when plaintiff first applied for a permit to sell alcoholic beverages, it is unnecessary for us to consider the additional argument made by defendants and intervenor that since that application was filed another school, which is “accredited,” also has been using the church’s facilities regularly for school purposes.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.