HOUGH v NORTH STAR BAPTIST CHURCH

Docket No. 53982. Submitted May 7, 1981, at Grand Rapids.—Decided
August 27, 1981. Leave to appeal denied, 411 Mich 1085.

Colonel Gerald L. Hough, director of the Michigan State Police,
petitioned the Luce Circuit Court for an order to show cause
and an injunction preventing the North Star Baptist Church
and its trustees and officers from using the North Star Baptist
Church building as a school until written approval of the state
fire marshal was obtained. The court, William F. Hood, J.,
granted the injunction and the respondents appealed. *Held:*

The state, acting within its police powers, may regulate
religious practices which run contrary to the state's interest in
the health, safety and welfare of its citizens. Application of
school fire safety regulations to a church building which is used
5 days a week from September to May, 6 hours a day, as a
Christian school for 20 students does not constitute per se an
unreasonable burden upon the free exercise of religion. Respon-
dents failed to meet their burden of proving an unreasonable
burden in this case.

Affirmed.

1. CONSTITUTIONAL LAW — RELIGIOUS FREEDOM — POLICE POWERS —
REGULATION OF RELIGIOUS PRACTICES.

The state, acting within its police powers, may regulate religious
practices which run contrary to the state's interest in the
health, safety and welfare of its citizens.

2. CONSTITUTIONAL LAW — FIRST AMENDMENT — TRIAL — BURDEN OF
PROOF.

The party alleging a First Amendment violation has the burden
of proving that the regulation in question imposes an unreason-
able burden or restriction upon his protected right.

REFERENCES FOR POINTS IN HEADNOTES
[1] 16A Am Jur 2d, Constitutional Law §§ 409, 417.
[2] 16A Am Jur 2d, Constitutional Law § 458.
[3] 68 Am Jur 2d, Schools §§ 75, 76.

3. SCHOOLS — SCHOOL BUILDINGS — FIRE SAFETY RULES — ADMINIS-
   TRATIVE CODE.

> A school building for purposes of applying school fire safety rules
> is a building or structure used by six or more students for
> instruction; in areas where instruction is incidental to some
> other occupancy, the fire safety requirements for that occu-
> pancy apply (1979 AC R 29.16[2]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for petitioner.

*Annis, Annis & Telman* (by *Timothy B. Visser)* and *Gibbs & Craze* (by *Daniel Jon Loomis),* for respondents.

Before: MACKENZIE, P.J., and R. B. BURNS and J. N. O'BRIEN,* JJ.

PER CURIAM. The Director of the Michigan State Police petitioned for an order to show cause why an injunction should not issue against respondents for failure to comply with school fire safety standards, MCL 388.851 *et seq.;* MSA 15.1961 *et seq.,* MCL 29.1 *et seq.;* MSA 4.559(1) *et seq.* A hearing was held, and the trial court, after filing findings of fact and conclusions of law, enjoined respondents from using the North Star Baptist Church building as a school until written approval for school building usage was obtained from the state fire marshal. Respondents appeal, and we affirm.

In September of 1978, the North Star Baptist Church established the North Star Academy, the church members feeling that they were required by their faith to give their children a Christian education. The entire school curriculum is oriented toward religion.

The school is located in the same building which

---

* Circuit judge, sitting on the Court of Appeals by assignment.

houses the North Star Baptist Church. Six students were enrolled in the school during the 1978-79 term, and 20 were enrolled by the end of the 1979-80 term. The school operates from September to May, six hours a day, five days a week. The students do not attend public school or any other private school. Respondents obtained no written approval from the state fire marshal or from the Department of Education, as is required by the aforementioned statutes, to use the building as a school.

Inspections of the building were conducted by Donald St. Arnauld, an officer from the state fire marshal's office, who reported the following violations: the structural members of the building consisted entirely of wood and did not have a one-hour fire resistance rating, MCL 388.851(b); MSA 15.1961(b); 1979 AC R 29.31; and the heating plant walls consisted of wood framing and drywalls, also not having a one-hour fire resistance rating, MCL 388.851(d); MSA 15.1961(d); 1979 AC R 29.151.

Respondents refused to comply with the school fire safety standards and refused to comply with an order of abatement issued by the state fire marshal's office. School usage continued until the injunction was issued by the trial court.

The primary contentions presented by respondents in this appeal were rejected on substantially identical facts in *State Fire Marshal v Lee,* 101 Mich App 829; 300 NW2d 748 (1980). We agree with that holding but offer our own reasons.

Respondents contend that the application of school fire safety regulations to a building used both as a church and as a school is unreasonable and arbitrary and imposes an unconstitutional burden on the free exercise of their religious beliefs.

While it is true that religious beliefs may not be restricted or regulated, the state, acting within its police powers, may regulate religious practices which run contrary to the state's interest in the health, safety, and welfare of its citizens. See *Cantwell v Connecticut,* 310 US 296; 60 S Ct 900; 84 L Ed 1213 (1940). The party alleging a First Amendment violation has the burden of proving that the regulation in question imposes a burden or restriction on the exercise of his or her religious beliefs. *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963). In the present case the trial court found that the church members believed that they were required by their religious precepts to establish a school and give their children a Christian education, and we concede that conducting the school is an exercise of their religious beliefs.

However, the fire safety regulations do not prevent respondents from operating a Christian school. Respondents are prevented only from conducting the school in a building which does not meet minimum fire safety standards applicable to all schools, public or private. The burden placed on respondents' practice of their religion is at most financial.

Involved here are laws concerned entirely with secular conduct, and, as such, they are valid unless their application is arbitrary or otherwise unreasonable. *Gillette v United States,* 401 US 437; 91 S Ct 828; 28 L Ed 2d 168 (1971), *reh den* 402 US 934; 91 S Ct 1521; 28 L Ed 2d 869 (1971), *Braunfeld v Brown,* 366 US 599; 81 S Ct 1144; 6 L Ed 2d 563 (1961), *Walsh v Louisiana High School Athletic Ass'n,* 616 F2d 152 (CA 5, 1980). The rules and regulations at issue have, as their purposes, the prevention of fire and the promotion of the health,

safety, and educational interests of the state's citizens. This is clearly a secular purpose. The Legislature has determined that schools present a unique situation requiring higher standards of fire prevention and safety than buildings used for open meetings.

Although the imposition of these fire safety standards might possibly prevent some churches from providing a place where their children can receive a Christian education, we conclude that respondents failed to carry the burden of proving that these fire safety laws and regulations impose an impermissible burden on the free exercise of their religious beliefs.

Respondents next contend that their use of the building as a school was incidental to its occupancy as a church and that, therefore, the fire safety regulations pertaining to a church rather than a school should be applied. Respondents base their argument on § 16(2) of the rules promulgated by the state fire safety board, which rules provide certain requirements for school buildings only. For purposes of the rules, a school building is defined as follows:

> " 'School building' or 'building' means a building or structure used by 6 or more students for instruction such as a school, university, college, or academy. In areas *where instruction is incidental to some other occupancy the fire safety requirements for that occupancy shall apply."* (Emphasis supplied.) 1979 AC R 29.16(2).

Respondents argue that the North Star Academy is incidental to the North Star Baptist Church and thus is not located within a "school building". We disagree. The above definition of a school building does not exclude the situation where a *school* is

incidental to some other occupancy, but where *instruction* is merely incidental to some occupancy other than a *school.* Therefore, despite the definite church involvement here, since the building is used as a school, and for instruction therein, we conclude that the activity being conduted in the North Star Academy is not incidental instruction as that term is used in the above-quoted rule. Respondents' argument is without merit.

The above rule reflects the realization that there are many instances where "incidental" instruction takes place outside of a "school". Seminars are often held in homes, offices, motels, or other buildings totally unconnected to a school. Instruction often takes the form of on-the-job training. In these cases the primary occupancy exists contemporaneously with any incidental instruction. Here the North Star Baptist Church meets the definition of a "school building"; thus the fire safety regulations for schools apply.

We find no merit to respondents' contention that the trial court improperly limited their cross-examination of a witness. The fire inspector's opinion on the merit of the safety regulations, or on the wisdom of applying those regulations here, is, as the trial court stated, nothing more than a legal argument. Furthermore, the fire inspector was not qualified as an expert witness in "safety". He was qualified to inspect buildings, to detect any noncompliance with safety standards, and to give testimony regarding such noncompliance.

Affirmed. No costs, a public question.