PEOPLE v DeJONGE

PEOPLE v BENNETT

Docket Nos. 106149, 109010. Submitted March 13, 1989, at Lansing. Decided August 8, 1989.

Mark DeJonge and Chris DeJonge were convicted in Ottawa Circuit Court, Calvin L. Bosman, J., of violating the state compulsory school attendance law. John Bennett and Sandra Bennett were convicted in Wayne Circuit Court, Richard P. Hathaway, J., of violating the state compulsory school attendance law. The defendants in the two cases kept their children home for school, with the mothers serving as teachers. Defendants claimed their home schools made them exempt from the law under MCL 380.1561(3)(a); MSA 15.41561(3)(a), which allows children not in a public school to attend a state approved nonpublic school. The state showed that defendants were not using certificated teachers as required by the law. Defendants DeJonge and Bennett filed separate appeals. The appeals have been consolidated.

The Court of Appeals *held*:

1. The home schools of the defendants do not comply with the compulsory school attendance law because they have no state certificated teachers.

2. The state's teacher certification requirement does not violate the right to free exercise of religion under the First Amendment.

3. The teacher certification requirement does not violate the Fourteenth Amendment right of parents to direct the education of their children.

4. The compulsory school attendance law does not violate

REFERENCES

Am Jur 2d, Constitutional Law §§ 459, 471-473, 481; Schools §§ 129, 132, 227 *et seq.*, 275 *et seq.*, 283 *et seq.*, 290 *et seq.*, 307 *et seq.*

Validity of state regulation of curriculum and instruction in private and parochial schools. 18 ALR4th 649.

What constitutes a private, parochial, or denominational school within statute making attendance at such school a compliance with compulsory school attendance law. 65 ALR3d 1222.

defendants' rights to procedural due process under the Fourteenth Amendment.

5. Defendants Bennetts' argument that the School Code, the object of which is to provide a system of public instruction, was used to regulate their nonpublic schools and that such use violates the title-object provisions of the Michigan Constitution is rejected. Private schools are regulated by the private, denominational, and parochial schools act. The title-object requirements of the Michigan Constitution have not been violated.

6. There was sufficient evidence to convict the Bennetts of violating the compulsory school attendance law.

Affirmed.

1. Schools — Private Schools — Certified Teachers — Curriculum.

Nonpublic schools must use state certified teachers and provide a minimum of 180 days and 900 hours of instruction; they must also offer a curriculum comparable to that offered by the local public school and comply with sanitary requirements (MCL 380.1561[1], 388.553; MSA 15.41561[1], 15.1923).

2. Schools — Private Schools — Certified Teachers — First Amendment.

The requirement of state certification of teachers in the private, denominational, and parochial schools act does not violate the First Amendment right to free exercise of religion (US Const, Am I; MCL 388.553; MSA 15.1923).

3. Constitutional Law — First Amendment — Trial — Burden of Proof.

The party alleging a First Amendment violation has the burden of proving that the regulation in question imposes an unreasonable burden or restriction upon his protected right (US Const, Am I).

4. Schools — Private Schools — State Interest in Education — Requirements for Private Schools.

The interest of the state in providing an education for its youth is of sufficient urgency to be classified as "compelling" within the constitutional standard that any intrusion upon religious practice can only be justified if there is a "compelling state interest"; the state's regulations regarding curriculum and teacher certification requirements in nonpublic schools are a reasonable means of giving effect to that compelling state interest and are a reasonable exercise of state authority in the field of education.

5. CONSTITUTIONAL LAW — FIRST AMENDMENT — STANDARD OF RE-
VIEW.

A state regulation which, after analysis under the First Amend-
ment, has been found not to be violative of parents' right to
direct the education of their children need not be analyzed
under the Fourteenth Amendment; there is no stricter stan-
dard of review than that required by the First Amendment (US
Const, Ams I, XIV).

6. CONSTITUTIONAL LAW — EDUCATION — RIGHTS OF PARENTS.

The right of parents to control the education of their children is
not absolute; they must comply with state laws.

7. SCHOOLS — HOME STUDY PROGRAMS — UNCERTIFIED TEACHERS.

Children who attend a home study program with instruction by
teachers who are not certified may be compelled to attend a
public school or a state approved nonpublic school (MCL
380.1561 et seq.; MSA 15.41561 et seq.).

8. SCHOOLS — PRIVATE, DENOMINATIONAL, AND PAROCHIAL SCHOOLS
ACT — VAGUENESS.

The private, denominational, and parochial schools act as applied
to home schools is not impermissibly vague (MCL 380.1561 et
seq.; MSA 15.41561 et seq.).

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *Wesley J. Nykamp,*
Prosecuting Attorney, and *Mark A. Feyen,* Assis-
tant Prosecuting Attorney, in Docket No. 106149,
and *John D. O'Hair,* Prosecuting Attorney, *Timo-
thy A. Baughman,* Chief of the Criminal Division,
Research, Training and Appeals, and *Olga Ag-
nello,* Assistant Prosecuting Attorney, in Docket
No. 109010, for the people.

*David A. Kallman,* and *Michael P. Farris* and
*Christopher J. Klicka,* of the Home School Legal
Defense Ass'n, for defendants DeJonge.

*Eisenberg & Mazor, P.C.* (by *Leonard M. Mazor*),
for defendants Bennett.

Before: DOCTOROFF, P.J., and MAHER and MARI-
LYN KELLY, JJ.

Marilyn Kelly, J.

I

FACTUAL BACKGROUND

The defendants in these cases are parents who were found guilty of violating the state compulsory school attendance law. MCL 380.1561; MSA 15.41561, MCL 380.1599; MSA 15.41599. The Bennetts and the DeJonges kept their children home for school, the mothers serving as teachers. Defendants claimed their home schools made them exempt from the law under § 1561(3)(a), which allows children not in a public school to attend a "state approved nonpublic school." The state showed that defendants were not using certificated teachers as required. On appeal, the Bennetts and the De-Jonges raise constitutional challenges to the compulsory school attendance law as it applies to children who are taught at home.

In September, 1984, after becoming aware that the DeJonge children were not attending public school, the assistant superintendent in their district wrote to the DeJonges. He informed them, among other things, that the law required their children be taught by a certificated teacher.

In October, 1984, formal truancy charges were filed, because the DeJonges failed to comply. On April 23, 1985, they were informed that warrants had been issued for their arrests.

The DeJonge children are taught at home through a program administered by the Church of Christian Liberty and Academy of Arlington Heights, Illinois. The family belongs to the Grand Valley Orthodox Christian Reformed Church. At the jury trial, their pastor, John Byker, testified their church teaches that the responsibility for

educating the children is given by God to the parents. Parents are allowed, however, to delegate that responsibility.

Michael McHugh, an employee of the Church of Christian Liberty and Academy, testified that his organization helps the parents educate their children. It provides testing, individualized curriculum, and monitoring of the home school. The academy adheres to the belief that parents have an inalienable right given by God to teach their own children. It does not require nor does it desire state licensure of its teachers, because certificated teachers must take courses which are based upon secular humanism. Such training conflicts with the religious beliefs of the members of the academy.

Chris DeJonge testified that she had been teaching her children at home for two years. She admitted that she is not certificated. She has a religious conviction that God commands parents to educate their children. She also agreed with her church's precepts as expressed by Pastor Byker, and nowhere stated that her responsibility to educate may not be delegated to others.

Mark DeJonge testified he believes that allowing the state to certificate his children's teachers is tantamount to permitting to usurp God's authority. Submitting to it constitutes a sin.

The DeJonges were convicted and sentenced to two years probation. They were fined $200 each, required to have their children tested for academic achievement and to arrange for a certificated teacher to instruct them. On appeal the DeJonges contend the certification requirement violates their First Amendment right to free exercise of their religious beliefs and their Fourteenth Amendment fundamental right to educate their children. They also argue violation of their right to due process. Specifically, they submit that they

were denied a neutral magistrate, because the local public school superintendent is empowered to determine whether their home school complies with state requirements.

Prior to the 1985-86 school year, the Bennetts' four children were enrolled in public schools. The Bennetts became dissatisfied and put their children into the Clonlara Home Based Education Program. Clonlara provided books, instructional materials and individualized curriculum guides for each child. With the aid of these materials, Sandra Bennett taught her children at home.

In July, 1985, after receiving a request for the records of the children from Clonlara, the local school district referred the matter to its attendance officer. The officer investigated the Bennetts' home school and determined that it did not comply with state requirements. The case was recommended for prosecution.

Dr. Pat Montgomery, founder and chief administrator of Clonlara, explained that the school offers campus-based and home-based education programs. The Bennett children were in the home-based program. Clonlara employed a certificated teacher who would confer with the Bennetts on occasion. The Bennetts had access to the teacher and to Dr. Montgomery by phone and mail. Clonlara also furnished bimonthly on-campus visits. During the visits, the children's work was reviewed, and the Bennetts were given instructions on teaching techniques. Clonlara compiled attendance records and administered achievement tests.

The Bennetts' testimony revealed that John Bennett drew up the lesson plans and Sandra Bennett was the instructor. Neither is a certificated teacher.

Following a bench trial, the Bennetts were convicted of four counts of violation of the compulsory

school attendance law. They were fined $50 each and required to present their children for academic testing and to arrange for instruction by a certificated teacher. Fines and costs were suspended provided the Bennetts complied with the court's order within ninety days.

The Bennetts raise five issues on appeal: (1) whether the certification requirement violates their fundamental right to direct the education of their children, (2) whether due process requires that the home school be closed before the parents can be prosecuted under the compulsory school attendance law, (3) whether the school attendance law is unconstitutionally vague as applied to home schools, (4) whether the use of the public school code to regulate their "home school" violates the title-object requirements of the Michigan Constitution, and (5) whether there is insufficient evidence to support their convictions.

II

LEGAL BACKGROUND

Defendants were convicted under the School Code of 1976. The code makes it a misdeameanor to fail to comply with the compulsory school attendance law. MCL 380.1599; MSA 15.41599. The attendance law states at MCL 380.1561; MSA 15.41561:

> (1) Except as provided in subsections (2) and (3), every parent, guardian, or other person in this state having control and charge of a child from the age of 6 to the child's sixteenth birthday, shall send that child to the public schools during the entire school year. The child's attendance shall be continuous and consecutive for the school year fixed by the school district in which the child is enrolled. In a school district which maintains

school during the entire calendar year and in which the school year is divided into quarters, a child shall not be compelled to attend the public school more than 3 quarters in 1 calendar year, but a child shall not be absent for 2 consecutive quarters.

Defendants attempted to fall under the following exemption:

(3) A child shall not be required to attend the public schools in the following cases:

(a) A child who is attending regularly and is being taught in a state approved nonpublic school, which teaches subjects comparable to those taught in the public schools to children of corresponding age and grade, as determined by the course of study for the public schools of the district within which the nonpublic school is located. [*Id.*]

There is no procedure for state approval of nonpublic schools. However, a "state approved nonpublic school" is defined in the School Code as a nonpublic school which complies with the private, denominational and parochial schools act (Private School Act). MCL 388.551-558; MSA 15.1921-1928. That act requires at MCL 388.553; MSA 15.1923:

No person shall teach or give instruction in any of the regular or elementary grade studies in any private, denominational or parochial school within this state who does not hold a certificate such as would qualify him or her to teach in like grades of the public schools of the state.

The compulsory school attendance law requires that nonpublic schools use state certificated teachers. They must offer a curriculum comparable to that offered by the local public school and comply with sanitary requirements.

The "home schools" of the DeJonges and the Bennetts do not comply with this law, because they have no state certificated teacher.

### III

### THE TEACHER CERTIFICATION REQUIREMENT DOES NOT VIOLATE THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT.

This precise issue has been addressed in the past by the Court of Appeals and by the Michigan Supreme Court. We held that state certification of teachers does not violate the First Amendment right to free exercise of religion. *Sheridan Road Baptist Church v Dep't of Education,* 132 Mich App 1; 348 NW2d 263 (1984) (*Sheridan*). The plaintiffs in *Sheridan* claimed that the certification requirement placed an unlawful burden on the exercise of their religious beliefs. We acknowledged that this state regulation placed a burden on the plaintiffs' right to free exercise of religion. However we found the burden minimal when compared with the state's compelling interest that high quality education be afforded our children. The Supreme Court affirmed in an evenly divided decision. *Sheridan Road Baptist Church v Dep't of Education,* 426 Mich 462; 396 NW2d 373 (1986), cert den 481 US 1050 (1987) (*Sheridan II*). Justices WILLIAMS and BOYLE wrote affirming opinions with Justice BRICKLEY concurring. Justice RILEY favored reversal with Justices LEVIN and CAVANAGH concurring.

The DeJonges contend that *Sheridan* and *Sheridan II* should not be given precedential effect. *Sheridan II* is not binding precedent, as it was not a decision of a majority of the Court. *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). However we can and do find the reasoning

in it persuasive authority. *DeMaria v Auto Club Ins Ass'n (On Remand),* 165 Mich App 251, 253-254; 418 NW2d 398 (1987). We note that all the justices agreed that the appropriate test in such cases is to balance the state's interest against the burden imposed on citizens' First Amendment rights. The state may justify its regulation of teachers by showing that enforcement of it is essential to fulfillment of a compelling state interest. *Sheridan II, supra,* p 555. The justices disagreed on the interpretation and application of the test.

In analyzing First Amendment free exercise objections, we make the following inquiries: (1) is the belief, or conduct motivated by the belief, religious in nature, (2) does the state regulation impose any burden on the exercise of those beliefs, (3) does some "compelling state interest" justify the burden imposed, and (4) is there a less obtrusive form of regulation available to the state. *Sherbert v Verner,* 374 US 398; 83 S Ct 1790; 10 L Ed 2d 965 (1963); *Wisconsin v Yoder,* 406 US 205; 92 S Ct 1526; 32 L Ed 2d 15 (1972); *Sheridan II, supra,* p 475.

Pastor Byker stated that his church allowed delegation of the parents' education responsibility. He indicated that certain of his parishioners had a child who was enrolled in a Christian school and, presumably, was taught by a certified teacher. Mr. McHugh did not say his academy opposed certification, merely that it disfavored it, because the required humanistic courses conflict with its beliefs. This objection was raised in the *Sheridan* cases. *Sheridan, supra,* p 9.

Mrs. DeJonge concurred with both Byker and McHugh. Mr. DeJonge's objections appeared to go further, in that he believes it a sin to submit to state authority and to employ certificated teachers.

Judging from his pastor's testimony on the subject, this is Mr. DeJonge's personal religious belief, not the credo of his church. The record contains little to guide us in evaluating this professed belief, and it is difficult to determine its sincerity. See *Frazee v Illinois Dep't of Employment Security,* 489 US —; 109 S Ct 1514; 103 L Ed 2d 914 (1989). For the purposes of our analysis, we will assume it is sincere.

We find that the burden imposed by the state certification of teachers on the religious views of Mrs. DeJonge is minimal. As she alleges a violation, she has an obligation to prove the regulation imposes a burden on the exercise of her belief. *Hough v North Star Baptist Church,* 109 Mich App 780, 783; 312 NW2d 158 (1981). Her religious belief does not prohibit her from hiring certificated teachers. She has failed to show she cannot hire a certificated teacher who meets her qualifications.

It is more difficult to analyze the burden imposed on the personal religious belief of Mr. De-Jonge. He opposes all state regulation of education and, it appears, would object to any state involvement in the education process in practicing this belief. Thus, the burden of the state certification law on the belief is high, and there appears to be no room for compromise. Although Mr. DeJonge's religious freedom to believe is absolute, his freedom to act on that belief is not. His conduct remains subject to regulation for the protection of societal interests. *Cantwell v Connecticut,* 310 US 296, 303-304; 60 S Ct 900; 84 L Ed 1213 (1940). Indeed, as Justice WILLIAMS pointed out in *Sheridan II, supra,* p 482:

> Religious school teachers may have to receive more training in order to become certified, but the regulations do not require anyone to attend

courses taught from a perspective contrary to their beliefs. The teachers can fulfill all the state certification requirements while attending either a religious or nonreligious institution. For these reasons, we find the infringement on free exercise rights is minimal and is outweighed by the state's interest.

We conclude that the state has a compelling interest which justifies the burden on the DeJonges' religious freedom imposed by teacher certification. Michigan has had an intense concern about the quality of the education of its citizens for many years. This has been evident in each of its constitutions, in its case law and in a long line of legislative enactments. Const 1963, art 8, § 1; Const 1908, art 11, § 1; Const 1835, art 10, § 2; *Dennis v Wrigley,* 175 Mich 621, 625; 141 NW 605 (1913); *Sheridan, supra,* pp 13-15; *Sheridan II, supra,* pp 478-482. Maintaining and improving the quality of our education continues to be one of the most important issues in Michigan today. The teacher certification requirement is a backbone in the protection of this vital state interest.[1]

We find that the certification requirement is the least obtrusive means of achieving the state's interest. In arguing to the contrary, the DeJonges have not proposed an alternative. Their position is

[1] The DeJonges also argue that the state did not approve at trial that it had a compelling interest. Although the prosecutor did not present proofs that there was such an interest, he did rely on this Court's decision in *Sheridan.* That case was on appeal to the Supreme Court at the time. The trial court was entitled to rely on it as persuasive authority. *Sheridan* clearly stands for the proposition that the state has a compelling interest in education.

The DeJonges further attack *Sheridan* by arguing that a stipulation entered into by the parties in that case weakens its authority. This stipulation was not part of the record below and will not be considered by this Court. *Banta v Serban,* 370 Mich 367, 368, n 1; 121 NW2d 854 (1963). The DeJonges cite no authority for the proposition that a stipulation by parties in an unrelated lawsuit has any effect beyond the bounds of that case.

based solely on the assertion that most other states do not require certificated teachers in home schools. The DeJonges argue implicitly that teachers should not be required to be licensed, that curriculum and attendance requirements are sufficient to protect the state's interest.[2] We disagree.

Curriculum and attendance requirements ensure that the student and the educational material are in the same place at the same time. However, they do nothing to ensure that the material is imparted to the child in such a way as to be understandable. Alone they are unlikely to stimulate intellectual curiosity and inquiry or to cause that fascinating conjunction of superficially incompatible facts that is creative thought.

State licensure does not guarantee quality teachers. But one cannot ignore the high likelihood that a person who meets the qualifications for certification has absorbed the knowledge a competent teacher should have. *Sheridan, supra,* pp 18-20. See also *State v Rivinius,* 328 NW2d 220 (ND, 1982), cert den 460 US 1070 (1983); *State v Patzer,* 382 NW2d 631 (ND, 1986), cert den 479 US 825 (1986); *State ex rel Douglas v Faith Baptist Church of Louisville,* 207 Neb 802; 301 NW2d 571 (1981), app dis 454 US 803 (1981). A review of Michigan history reveals that the certification process has prepared many fine teachers who have made an inestimable contribution over the years to the citizens of this state.

We conclude that the state's teacher certification requirement does not violate the DeJonges' First Amendment right to freely exercise their religion.

[2] Assuming Mr. DeJonge opposes all state regulation in the education of his children, he would oppose curriculum and attendance requirements. The exercise of his belief would leave the state interest unprotected. Unfortunately, Mr. DeJonge did not elaborate on the extent of his belief. One may reasonably assume that he believes the state has no compelling interest in his children's education or that it does not need to protect its interest.

IV

### THE TEACHER CERTIFICATION REQUIREMENT DOES NOT VIOLATE THE FOURTEENTH AMENDMENT RIGHT OF PARENTS TO DIRECT THE EDUCATION OF THEIR CHILDREN.

The United States Supreme Court has recognized a fundamental right of parents to direct the education of their children. It is independent of the First Amendment and protected under the personal substantive due process guarantees in the Fourteenth Amendment. See *Sheridan II, supra,* pp 536-540, and cases cited therein. As we have found the certification requirement does not violate rights to free exercise under the First Amendment, we need not analyze its effect on rights under the Fourteenth Amendment. There is no stricter standard of review than that required by the First Amendment. *Sheridan II, supra,* pp 487-488, n 2, 539-540, n 31.

Having so concluded, we express our disagreement with defendants' assertions as to the applicable standard of review where the issue is the parents' right to control education. Defendants allege that the correct test is whether the governmental regulation is justified as necessary to achieve a compelling state interest. We hold that, although parents have a right to control the education of their children, that right is not absolute. Parents must nonetheless comply with state laws. The correct test is whether the state's regulation bears a rational relationship to some legitimate state purpose. *Hanson v Cushman,* 490 F Supp 109 (WD Mich, 1980). The state certification requirement meets this standard of review.

V

THE COMPULSORY SCHOOL ATTENDANCE LAW DOES
NOT VIOLATE DEFENDANTS' RIGHTS TO PROCEDURAL
DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.

The Bennetts allege that the compulsory school
attendance law as applied by the state is vague.
They claim it violated their procedural right to a
hearing before prosecution and their right to no-
tice. The DeJonges contend the law denied them
their right to a neutral magistrate.

The Bennetts argue that before they can be
prosecuted under the compulsory school atten-
dance law, they are entitled to a hearing to deter-
mine if their "school" should be closed down. This
claim is based on § 4 of the Private School Act. It
provides at MCL 388.554; MSA 15.1924:

> Sec. 4. In event of any violation of this act the
> superintendent of public instruction shall serve
> the person, persons, corporation, association or
> other agencies who operate, maintain and conduct
> a private, denominational or parochial school
> within the meaning of this act with a notice, time
> and place of hearing . . . . If at such hearing the
> superintendent of public instruction shall find that
> the violation complained of has been established
> he shall then serve said person, persons, corpora-
> tion, association or other agencies with an order to
> comply with the requirements of this act found to
> have been violated within a reasonable time not to
> exceed 60 days from the date of such order . . . .
> If the order of the superintendent of public in-
> struction as specified in said notice shall not have
> been obeyed within the time specified herein said
> superintendent of public instruction may close said
> school and prohibit the said person, persons, corpo-
> ration, association or other agencies operating or
> maintaining such private, denominational or paro-
> chial school from maintaining said school or from

exercising any of the functions hereunder until said order of the superintendent of public instruction has been complied with. The children attending a private, denominational or parochial school refusing to comply with the requirements hereof after proceedings herein set forth shall be compelled to attend the public schools or approved private, denominational or parochial school under the provisions of the compulsory education act, the same being Act No. 200 of the Public Acts of 1905, as amended.

The Bennetts contend that the mandatory school attendance law and the Private School Act must be read together. They argue their children cannot be compelled to attend a public or approved private school until after a hearing establishes that their "home school" does not comply with the act. They insist they cannot be prosecuted for failure to send their children to a recognized school until it has been established that their children can be compelled to attend. Therefore, they contend, the Private School Act hearing must be held first.

The state responds that the purpose of the hearing referred to by the Bennetts is to close a school. It is not the concern of the prosecutor. The compulsory school attendance law does concern the prosecutor. Its sanctions were intended to be imposed on parents. They are separate from the provisions of the Private School Act which are directed at school administrators. Confusion arises, because in a "home school" situation, the parents are the only administrators.

The Private School Act hearing is not available to the Bennetts, because they have no school to close. This becomes apparent as one realizes just what a school is within the meaning of the Private School Act. The act itself does not offer a definition. It merely provides that a private, denomina-

tional or parochial school is any school other than a public school giving instruction to children under sixteen years of age. MCL 388.552; MSA 15.1922. We note that when the Legislature passed the Private School Act in 1921, it most likely did not contemplate the type of home study program implemented by the defendants. Only later, after the proliferation of such programs, did it become necessary to determine if they were schools.

A school has been defined by the Supreme Court as an "institution with educational purposes and activities." *Boys' Clubs of Detroit v Pakula,* 342 Mich 150, 156; 69 NW2d 348 (1955). The Bennetts' program for home study has educational purposes and activities. But it does not qualify as an institution. In some instances a home study program may become a school. The Attorney General ruled at OAG, 1979, No 5579, p 416 (September 27, 1979) (quoting an unpublished letter opinion of the Attorney General, No. M-576 (May 18, 1961), as an accurate statement of the law. See OAG, 1979, No 5579, p 418.):

> [A] parent who holds a Michigan teacher's certificate and provides comparable educational instruction to his child or children in his home or employs a legally qualified tutor who provides comparable instruction to his child or children in his home and meets the sanitary conditions of the same standard as in the public schools, is complying with section 731 of the School Code of 1955, in that he is providing an education for his child or children at a private school.

It is the presence of other elements such as a qualified teacher and comparable instruction which transforms home education into something more akin to an institution and thus to a school. The Bennetts' program lacks these elements.

Not only is the Bennetts' program not a school under the Private School Act, it is not a "state approved nonpublic school" as defined by the School Code. As the Bennett children are attending a home study program with instruction by noncertificated teachers, they may be compelled to attend a public school or a "state approved nonpublic school." MCL 380.1561 *et seq.*; MSA 15.41561 *et seq.*

The Bennetts argue that Michigan law as applied to "home schools" is impermissibly vague. The standard was set forth in *Kolender v Lawson,* 461 US 352, 357; 103 S Ct 1855; 75 L Ed 2d 903 (1983). It requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. It must not encourage arbitrary and discriminatory enforcement. The Bennetts contend that the statutes do not sufficiently set forth what requirements a "home school" must meet. We disagree.

The penal statute states clearly that parents must send their children to public schools or nonpublic schools that comply with certain requirements. The requirements are set forth in the statutes and include certificated teachers, a comparable curriculum and a minimum amount of instruction. The comparable curriculum requirement has been held not to be unconstitutionally vague. *Sheridan, supra,* pp 25-26. The certification requirement is easily read to mean that instruction must be given by a teacher who has been granted state certification. These requirements are not vague, and an ordinary person could easily understand them.

The DeJonges contend that their due process rights are violated by a requirement that they have their "home school" approved by the superin-

tendent of a public school system. A school super-intendent has an interest in encouraging children to attend public schools, because the district receives a significant amount of state aid for each additional child. Thus, the DeJonges argue, the magistrate is not neutral.

First we note that no approval process exists. A "state approved nonpublic school" is simply a school which complies with the requirements. MCL 380.6(8); MSA 15.4006(8).

Even if there were an approval process, the DeJonges admit that they did not comply with the teacher certification requirement. Because they admit noncompliance, the hearing officer need not exercise discretion. The result would be the same regardless of the partiality of the magistrate.

VI

THE TITLE-OBJECT REQUIREMENTS OF THE MICHIGAN
CONSTITUTION WERE NOT VIOLATED.

Article 4, § 24 of the Michigan Constitution provides in part: "No law shall embrace more than one object, which shall be expressed in its title." The School Code of 1976 is designed to implement the constitutional mandate to the Legislature to encourage, provide for and maintain elementary and secondary education in this state. Const 1963, art 8, §§ 1 and 2. The Bennetts argue that the School Code is being used to regulate private schools. They are incorrect. Private schools are regulated by the Private School Act.

The compulsory attendance provisions of the School Code place a duty on parents of school-age children to send their children to schools. These provisions do not regulate private schools. They merely provide that the parents may, in discharge

of their duty, send their children to a private rather than a public school. Whatever the nature of the school, it must meet the requirements which the state has the power to impose. *In re Constitutionality of PA 1970, No 100,* 384 Mich 82, 97; 180 NW2d 265 (1970). The title-object requirements of the Michigan Constitution have not been violated.

VII

### THERE WAS SUFFICIENT EVIDENCE TO CONVICT THE BENNETTS OF VIOLATING THE COMPULSORY SCHOOL ATTENDANCE LAW.

The Bennetts contend that there was insufficient evidence to convict them of violating the compulsory school attendance law. They argue that the prosecutor did not prove beyond a reasonable doubt that they failed to comply with state requirements. The requirements in question were the availability of a certificated teacher for instruction and a curriculum comparable to those in the public schools. The trial court found that the Bennetts failed to satisfy each of these requirements. Both must be met in order to qualify for the exemption. MCL 380.1561(3)(a); MSA 15.41561(3)(a).

We conclude that the prosecutor presented sufficient evidence from which the trier of fact could conclude that the Bennetts did not supply a certificated teacher to instruct their children. Both the general school laws and the Private School Act prohibit instruction by any person who does not hold a valid teaching certificate. MCL 380.1233; MSA 15.41233, MCL 388.553; MSA 15.1923. The exceptions do not apply to this case.

The testimony of the Bennetts and of Dr. Montgomery leave no doubt that Mrs. Bennett was providing the Bennett children all of their instruc-

tion. Sandra Bennett admitted that she did not have a teacher's certificate. Occasional visits to the certificated teacher do not fulfill the state requirement. The record reveals that the certificated teacher's role was supervisory and administrative, not instructional. There was certainly sufficient evidence presented from which the trial court could conclude that the Bennetts did not satisfy this requirement and thus violated the compulsory school attendance law.

Based on our conclusion, we find it unnecessary to address the Bennetts' allegations concerning proof on the remaining requirements.

### VIII

### CONCLUSION

We affirm the defendants' convictions. The state requirement of certification of teachers as applied to defendants is constitutional under the First Amendment right to free exercise of religious beliefs. It also satisfies Fourteenth Amendment substantive and procedural due process guarantees. The title-object requirements of the Michigan Constitution were not violated. There was sufficient evidence to support the Bennetts' convictions.

Affirmed.